DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Defendant-Appellant, Rodney L. Vinson, appeals his conviction for forgery and the resulting sentence imposed by the Summit County Court of Common Pleas. We affirm.
 {¶ 2} On June 14, 2004, Jennifer Soja deposited a third-party check into her account with National City Bank. The check bore the signature of a "Rodney Vinson" and the notation that it was payable to the order of Ms. Soja. The purported payor of the check was the Reserves Network; Defendant was the payee. Ms. Soja received one hundred dollars cash from the teller at the time of the transaction. The check, however, was fraudulent. *Page 2 
 {¶ 3} Defendant was indicted on one count of forgery, a violation of R.C. 2913.31(A)(3), and one count of theft, a violation of R.C.2913.02(A)(1)/(3), both of which constitute felonies of the fifth degree. Defendant pled not guilty, and the matter proceeded to a jury trial on April 26, 2006. The trial court dismissed the charge of theft on motion of the State at the close of its case, and the jury found Defendant guilty of the remaining charge. On May 23, 2007, the trial court sentenced Defendant to six months of incarceration, but suspended his prison sentence and sentenced Defendant to two years of community control, including ninety days in a work release program, and ordered Defendant to pay restitution in the amount of $100. Defendant timely appealed and has raised four assignments of error.
 ASSIGNMENT OF ERROR I "The trial court's judgment is against the manifest weight of the evidence and is unsupported by the evidence."
 ASSIGNMENT OF ERROR II "The trial judge erred when it failed to grant the [Crim.R.] 29 motions."
 {¶ 4} In his first and second assignments of error, Defendant argues that his conviction for forgery is supported by insufficient evidence and is against the manifest weight of the evidence. Specifically, Defendant argues that he should not have been convicted on the testimony of Ms. Soja that he uttered the check in *Page 3 
question because her statements lacked credibility. Defendant also maintains that the State failed to connect any of the handwriting on the back of the check to him.
 {¶ 5} When reviewing the trial court's denial of a Crim.R. 29 motion, this court assesses the sufficiency of the evidence "to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. In making this determination, we must view the evidence in the light most favorable to the prosecution. Id.; State v. Feliciano (1996), 115 Ohio App.3d 646,652. "In essence, sufficiency is a test of adequacy." State v.Thompkins (1997), 78 Ohio St.3d 380, 386.
 {¶ 6} "While the test for sufficiency requires a determination of whether the [S]tate has met its burden of production at trial, a manifest weight challenge questions whether the [S]tate has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citing Thompkins, 78 Ohio St.3d at 390 (Cook, J., concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340. *Page 4 
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 7} Because sufficient evidence is required to take a case to the jury, the conclusion that a conviction is supported by the weight of the evidence necessarily includes a finding of sufficiency. State v.Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2. "Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." Id. This case is not the rare instance in which the weight of the evidence warrants a new trial, and so resolution of Defendant's first assignment of error is dispositive of his second as well.
 {¶ 8} Defendant was convicted of forgery in violation of R.C.2913.31(A)(3), which provides that "No person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall * * * Utter, or possess with purpose to utter, any writing that the person knows to have been forged[.]" For purposes of this statute, R.C. 2913.01(H) provides that "`[u]tter' means to issue, publish, transfer, use, put or send into circulation, deliver, or display." The offense of uttering a forged document is, therefore, distinct from the offense of creating the forgery. "Forgery proscribes the creation of false writings, whereas uttering generally proscribes the subsequent transfer of such writings. By forging a document the offender does not necessarily transfer or utter the document. Conversely, by transferring or uttering a forged document, the offender does not *Page 5 
create, and need not have created, the forged document." State v.Bounds (1995), 107 Ohio App.3d 700, 705, citing State v. Hunter (1983),12 Ohio App.3d 75, 77-78.
 {¶ 9} Defendant's former girlfriend, Jennifer Soja, testified that on June 14, 2004, Defendant came to her home in order to give her money that he owed her as the result of damage to the window of her automobile. Defendant showed her a check payable to him, which he had already endorsed, and Ms. Soja told him that he would have to endorse the check payable to her in order for her to cash it. Ms. Soja stated that when the pair arrived at the branch of National City Bank where she banked, Defendant endorsed the check over to her. She recalled that the proceeds from the check, with the exception of one hundred dollars cash which she gave to Defendant, were held for deposit in her account. According to Ms. Soja, the agreement between the two was that one-half of the proceeds from the check would go toward her car repair expense and one-half would be returned to Defendant at a later date.
 {¶ 10} Ms. Soja testified that she developed suspicions regarding the authenticity of the check when it did not clear within the next few days. At that time, she contacted the customer service department at National City Bank and voiced her concerns. Ultimately, Ms. Soja recalled, the check was determined to have been counterfeit and the funds were retracted from her account. Because Ms. Soja held a joint account with her mother, her mother's account was also debited. *Page 6 
 {¶ 11} On cross-examination, Ms. Soja admitted that she did not obtain bank confirmation that she had stopped payment on the check. She also acknowledged that she did not contact law enforcement after she learned that the check was counterfeit, nor did she mention to bank personnel that the check was given to her by Defendant. Ms. Soja also admitted that she wrote checks on the funds to cover her expenses in anticipation of her next paycheck despite her agreement with Defendant that he would receive half of the funds.
 {¶ 12} Ms. Soja characterized her relationship with Defendant as tumultuous and short-lived. They dated for approximately one month, followed by a longer period "under false pretenses" when, she stated, Defendant "jerk[ed] me along, making me think I was in a relationship when he wasn't being faithful to me the whole time. * * * Because I caught him cheating on me." Ms. Soja also characterized this period as "more on and off than anything * * * see each other once in awhile, then we don't. We do, we don't." Ms. Soja also testified that the money owed to her by Defendant was due to an altercation between the two in which Defendant hurled an object through the window of her car. In retrospect, Ms. Soja characterized her own conduct as "young and dumb and immature."
 {¶ 13} Danielle Jamiot, an employee of the fraud investigations unit of Fifth Third Bank, testified that The Reserves Network is a client of Fifth Third Bank. She recalled that in 2004, the account held by The Reserves Network "was exposed and counterfeit checks had cleared[.]" Ms. Jamiot confirmed that the *Page 7 
check which had been deposited into Ms. Soja's bank account was one such spurious check. She observed irregularities on the face of the check, which included an incorrect routing number, the wrong format for the payor's business name, missing business information, and incorrect visual layout of the check itself. She noted that the check omitted the social security number of the payee, an item that was ordinarily present on payroll checks. Finally, she noted two typographical errors on the face of the check: an uncapitalized letter "P" in the city name of Fairview Park and a nonexistent zip code for the City of Cleveland.
 {¶ 14} The final witness at trial was Detective Deborah Lovelace, a nine-year veteran of the Akron Police Department's Financial Crimes Division whose responsibilities include the investigation of all check fraud cases that are processed by the Department. Detective Lovelace testified that her experience included training from the United States Secret Service in handwriting analysis and comparison. Detective Lovelace noted that the original endorsement on the back of State's Exhibit 1 and the endorsement to Ms. Soja appeared to have been made by the same person, while the endorsement to Ms. Soja and the signature that appeared below as her endorsement appeared to have been made by different individuals.
 {¶ 15} Detective Lovelace also testified regarding an interview with Defendant that she conducted in 2006. During the interview, Defendant admitted that he received the counterfeit check by mail then showed the check to his *Page 8 
mother, who expressed the opinion that it did not seem genuine. Defendant nonetheless took the check to Country Mart and presented it to be cashed, only to be informed by the staff "that it was a bad check." As Detective Lovelace recalled, Defendant's version of events was that he left the check at the Country Mart and had no further involvement with it.
 {¶ 16} Detective Lovelace acknowledged that she did not recommend that the State obtain a handwriting exemplar from Defendant in this case because she determined that it had only marginal relevance to her investigation. Detective Lovelace testified that an exemplar would have been of limited usefulness because "Looking at the — what was on the back of the check, there wasn't that much to go on," and Defendant provided a written statement that was printed rather than written in longhand. On cross-examination, Detective Lovelace also confirmed that she was unable to obtain a surveillance videotape from National City Bank that supported Ms. Soja's version of the events because the bank disposed of its video records after six months.
 {¶ 17} Ms. Soja's testimony established a direct link between the counterfeit check, Defendant, and the utterance of the check by endorsing it to Ms. Soja for cashing. Defendant's arguments regarding the weight of the evidence therefore relate to the jury's assessment of credibility and resolution of conflicts in Ms. Soja's testimony. Specifically, Defendant asserts that Ms. Soja's testimony *Page 9 
lacked credibility because it was motivated by bitterness caused by the termination of their romantic relationship.
 {¶ 18} In this respect, however, "the jury [was] free to believe, all, part, or none of the testimony of each witness." State v. Griffin, 9th Dist. No. 23459, 2007-Ohio-1944, at ¶ 9, quoting Price v. Jordan, 9th Dist. No. 04CA008423, 2004-Ohio-7184, at ¶ 35. This court's function is to determine whether the jury lost its way in its examination of the evidence so manifestly as to create a miscarriage of justice. Considering the evidence before the trial court, "[t]here is room for honest, yet reasonable disagreement on the issues of credibility of witnesses without either view being manifestly wrong." Taylor v.Board (Sept. 22, 2000), 2nd Dist. No. 2000 CA 26, at *2 (applying standard used to resolve manifest weight in a criminal context). We are not persuaded by our review of the evidence in this case and the credibility of Ms. Soja's testimony — including the history of her relationship with Defendant — that the jury's resolution of these matters constituted a miscarriage of justice.
 {¶ 19} This court may reverse a conviction and order a new trial only in the exceptional case where the evidence weighs heavily in favor of the defendant. Otten, 33 Ohio App.3d at 340. This is not such a case. Accordingly, Defendant's contentions that his convictions were against the manifest weight of the evidence and supported by insufficient evidence are without merit. Defendant's first and second assignments of error are overruled. *Page 10 
 ASSIGNMENT OF ERROR III "The trial court erred by overruling [Defendant's] objection to the prosecution's discriminatory dismissal of an African-American juror, thereby violating [Defendant's] Fourteenth Amendment Right to Equal Protection."
 {¶ 20} In his third assignment of error, Defendant maintains that the trial court erred by dismissing an African-American juror whom the State challenged for discriminatory reasons. We disagree.
 {¶ 21} Discriminatory use of peremptory challenges by the State violates the Fourteenth Amendment to the United States Constitution and is grounds for reversal of a conviction. See, generally, Batson v.Kentucky (1986), 476 U.S. 79. The determination of whether peremptory challenges have been exercised in a discriminatory manner involves a three-step inquiry. State v. Murphy (2001), 91 Ohio St.3d 516, 528. "In step one, the opponent of the peremptory challenge at issue must make a prima facie case that the proponent was engaging in racial discrimination. In step two, the proponent must come forward with a race-neutral explanation for the strike. In step three, the trial court must decide, on the basis of all the circumstances, whether the opponent has proved racial discrimination." Id., citing Purkett v. Elem (1995),514 U.S. 765, 767-768 and State v. White, 85 Ohio St.3d 433, 436. A trial court's factual finding that a peremptory strike was exercised without discriminatory intent will only be overturned on appeal if clearly erroneous. State v. Bryan, 101 Ohio St.3d 272, 2004-Ohio-971, at ¶ 106. *Page 11 
 {¶ 22} While Defendant seems to characterize the trial court's consideration of his Batson challenge as superficial and inadequate, our review of the record indicates that the opposite is true. Indeed, the trial court's response to the State's nondiscriminatory justification for striking Juror 15 is marked by judicial skepticism. In response to the State's argument that Juror 15 had difficulty hearing and following along during voir dire, the trial court stated:
 "Well, I'm not — I'm not casting aspersions on your motives, but Batson requires some objective reasons and your reasons so far I don't buy, so let me ask a couple questions."
The trial court questioned Juror 15 in detail about her background, physical condition, and ability to follow the course of the trial. The colloquy ended with the following exchange:
 "The Court: Have you had any trouble following what's been going on here in the trial so far?
 Do you hear-
 "Juror [15]: Yeah, I understood practically everything. I never been on jury before. This is my first time. And I am a sick person. I had a stroke, ain't been a year. But I came because they told me to come.
 "The Court: Are you going to have any — you going to have any problems sitting through a couple-day trial?
 "Juror [ 15]: Well, I get nervous sometime.
 "The Court: What about-
 "Juror [15]: Real shaky.
 "The Court: Pardon me? *Page 12 
 "Juror [ 15]: I get real shaky sometime. I get real shaky.
 "The Court: Okay. Can you hear — excuse me, can you hear all right or do you have any little hard of hearing at all?
 "Juror [15]: Yeah, sometimes hard of hearing, yes, I am. Sometime, not all the time. I go to the doctor for my ears. I have a little problem. I supposed to go to the doctor Monday."
After holding a sidebar conference with counsel, the trial court dismissed Juror 15 from the venire.
 {¶ 23} While the trial court did not state its findings regarding the State's nondiscriminatory reason for exercising its peremptory strike on the record, it can be inferred from the trial court's change of course with respect to Juror 15 that the trial court found the State's race-neutral explanation to be convincing enough to permit dismissal of the juror. The record reflects that the trial court's decision in this regard was not clearly erroneous. In addition to a marked hearing problem, the record indicates that Juror 15 was an aged women in generally poor health who by her own admission was a "sick person" who "came because they told [her] to come." Defendant's third assignment of error is overruled.
 ASSIGNMENT OF ERROR IV "The trial court abused its discretion in sentencing [Defendant] to incarceration."
 {¶ 24} In his fourth assignment of error, Defendant argues that the trial court erred by making insufficient findings on the record to support a prison term. *Page 13 
 {¶ 25} "It is the duty of the appellant, not this court, to demonstrate his assigned error through an argument that is supported by citations to legal authority and facts in the record." State v.Taylor (Feb. 9, 1999), 9th Dist. No. 2783-M, at *3. Accordingly, App.R. 16(A)(7) provides that the brief of an Appellant must include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." See, also, Loc.R. 7(A)(7). This court may disregard an assignment of error that is not presented in accordance with this rule. See App.R. 12(A)(2).
 {¶ 26} Defendant's argument with respect to his fourth assignment of error consists solely of two sentences: "[Defendant] was convicted of a felony of the fifth degree. The trial court did not make sufficient findings on the record justifying the sentencing of [Defendant] to any penal institution." It contains neither citations to the record nor references to the authorities upon which the alleged error rests. Defendant has failed to demonstrate any error by the trial court with respect to his sentencing, and his fourth assignment of error is overruled.
 {¶ 27} Defendant's assignments of error are overruled, and the judgment of the trial court is affirmed.
 Judgment affirmed. *Page 14 
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
 CARR, J. DICKINSON, J. CONCUR *Page 1