DECISION AND JOURNAL ENTRY
{¶ 1} Defendant, Claude Jones, has appealed the decision of the Summit County Court of Common Pleas finding him guilty of possession of cocaine under R.C. 2925.11(A) and tampering with evidence under R.C. 2921.12(A)(1). We affirm.
 {¶ 2} On February 25, 2004, Defendant was indicted for one count of trafficking cocaine, a felony in the first degree, one count of possession of cocaine, a felony in the first degree, one count of trafficking cocaine, a felony in the fourth degree, one count of possession of cocaine, a felony in the fourth degree, one count of tampering with evidence, and one count of obstructing official business.
 {¶ 3} A jury trial commenced on June 9, 2004, and the jury found Defendant not guilty of the charges of trafficking cocaine. The jury found Defendant guilty of possession of cocaine, a felony in the fourth degree, and obstructing official business. As the jury was unable to reach a unanimous verdict on the charge of possession of cocaine, a felony in the first degree, and the charge of tampering with evidence, the Court declared a mistrial on those two charges.
 {¶ 4} On July 7, 2004, a second jury trial commenced to address the charges of possession of cocaine, a first degree felony, and tampering with evidence. The jury found Defendant guilty of both charges. The trial judge ordered Defendant to serve his multiple sentences on the charges concurrently, for a total period of three years of incarceration. Defendant now appeals the issues in the second trial to this court.
 ASSIGNMENT OF ERROR I
"[Defendant's] conviction of possession of crack cocaine and tampering with evidence is against the manifest weight of the evidence."
 {¶ 5} In his first assignment of error, Defendant argues that his conviction was against the manifest weight of the evidence. He claims that the relevant evidence against him does not support the convictions of cocaine possession and tampering with evidence. We disagree.
 {¶ 6} When a defendant maintains that his conviction is against the manifest weight of the evidence,
"[A]n appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Otten (1986), 33 Ohio App.3d 339, 340.
This court may only invoke the power to reverse based on manifest weight in extraordinary circumstances where the evidence presented at trial weighs heavily in favor of a defendant. Id. Absent extreme circumstances, an appellate court will not second-guess determinations of weight and credibility. Sykes Constr. Co. v. Martell (Jan. 8, 1992), 9th Dist. Nos. 15034 and 15038, at 6.
 {¶ 7} Defendant was convicted of cocaine possession under R.C.2925.11(A) which makes it a felony to "knowingly obtain, possess, or use a controlled substance." "`Possession is defined as `having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found.'" R.C. 2925.01(K).' State v.Smith (June 19, 2002), 9th District No. 20855, 2002-Ohio-3034, at ¶ 12, quoting R.C. 2925.01.
 {¶ 8} On February 16, 2004, Akron police officers Rodney Criss and Adam Lemonier were conducting an undercover surveillance of Shaderra McGowan, a known drug trafficker. During the surveillance, the officers observed Defendant entering an Akron home where Mr. McGowan was located. After approximately 25 minutes, Defendant, Mr. McGowan and a third individual left the location in two vehicles. Officers Criss and Lemonier subsequently alerted two additional officers, Officers Don Schismenos and Officer Drew Kelley, who were in marked police cars, to stop the vehicles. When the police pulled Defendant's vehicle over, Defendant exited the vehicle and ran from the police, throwing a large plastic baggie on the sidewalk as he fled.
 {¶ 9} Defendant ran through a backyard, at which time the officer in pursuit was unable to clear a fence and could not continue after Defendant. The officer then returned to where he saw Defendant throw the plastic baggie on the sidewalk and found it contained crack cocaine. During this time, two other Akron police officers were notified of the foot chase, and they arrested Defendant after observing Defendant exiting a nearby yard. The officers did a pat-down search of Defendant after arresting him and found a packet of powder cocaine in his back pocket.
 {¶ 10} Officer Lemonier testified that he interviewed Defendant subsequent to his arrest and asserted Defendant was read his Miranda rights before being interviewed by the police. Officer Lemonier also testified that Defendant said he was told by Shaderra McGowan to deliver the crack cocaine to someone on Waterloo Road. Defendant said that he had tossed the bag while running because he was "scared to get caught with it." The police officer testified that, after speaking to the other officers involved in the case, he went back into the interview room and asked Defendant if he would give a tape-recorded statement. The officer stated that Defendant wanted to make a deal, and the officer informed Defendant that he could not promise him any deals at that time. Defendant then requested the assistance of counsel and refused to give any further statements, according to the officer's testimony.
 {¶ 11} Upon reviewing the record in the case at bar, we cannot say that Defendant's conviction is against the manifest weight of the evidence. Though the police officers and Defendant's version of the events differ, we do not find that Defendant's conviction was against the manifest weight of the evidence.
 {¶ 12} The jury in this case had the opportunity to view the witnesses' testimony and judge their credibility. In a jury trial, matters of credibility of witnesses are primarily for the trier of fact, therefore, we must give deference to the jurors' judgment. See State v.Lawrence (Dec. 1, 1999), 9th Dist. No. 98CA007118, at 13; State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. We will not overturn the verdict on a manifest weight challenge simply because the jury chose to believe the evidence proffered by the prosecution.State v. Merryman, 9th Dist. No. 02CA008109, 2003-Ohio-4528, at ¶ 28. See also, State v. Warren (1995), 106 Ohio App.3d 753, 760. The trier of fact did not lose its way in resolving the factual conflicts in the testimony and convicting Defendant of possession of cocaine and tampering with evidence. Accordingly, the first assignment of error is overruled.
 ASSIGNMENT OF ERROR II
"There was insufficient evidence to support [Defendant's] conviction of possession of crack cocaine and tampering with evidence."
 {¶ 13} In his second assignment of error, Defendant argues that the prosecutor did not prove beyond a reasonable doubt all of the necessary elements of the charges of possession of crack cocaine and tampering with the evidence. Defendant also asserts that even though defense counsel failed to file a Criminal Rule 29 motion, this failure does not waive an argument on appeal concerning the sufficiency of the evidence. This court disagrees.
 {¶ 14} As an initial matter, this court notes that the sufficiency and manifest weight of the evidence are legally distinct issues. State v.Manges, 9th Dist. No. 01CA007850, 2002-Ohio-3193, at ¶ 23, citing Statev. Thompkins (1997), 78 Ohio St.3d 380, 386. Sufficiency tests whether the prosecution has met its initial burden of production at trial, whereas a manifest weight challenge questions whether the production has met its burden of persuasion. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at 3.
 {¶ 15} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal under Crim.R. 29(A) if, after "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) Jackson v. Virginia (1979), 443 U.S. 307, 319,61 L.Ed.2d 560.
 {¶ 16} This Court has previously held that a "defendant who is tried before a jury and brings a Crim.R. 29(A) motion for acquittal at the close of the state's case waives any error in the denial of the motion if the defendant puts on a defense and fails to renew the motion for acquittal at the close of all the evidence." State v. Jaynes, 9th Dist. No. 20937, 2002-Ohio-4527, at ¶ 7, quoting State v. Miley (1996),114 Ohio App.3d 738, 742, appeal not allowed (1997),77 Ohio St.3d 1548.
 {¶ 17} In the case sub judice, appellant did not assert a Crim.R. 29 motion during the second trial. In order to preserve the right to appeal the sufficiency of the evidence upon which a conviction is based, a defendant must file a timely Crim.R. 29 motion for acquittal with the trial court, and must also renew the motion at the close of all the evidence. State v. Lyons, 9th Dist. No. 03CA0023-M, 2003-Ohio-5783, at ¶ 4. Therefore, Defendant has waived any challenge to the sufficiency of the evidence supporting his conviction, and thus cannot raise it on appeal.
 {¶ 18} In resolving Appellant's first assignment of error, we concluded that his convictions for possession of cocaine and tampering with evidence were not against the manifest weight of the evidence. Based on our previous finding that "a determination that [a] conviction is supported by the weight of the evidence [is] dispositive of the issue of sufficiency," we find that a motion for acquittal based on insufficient evidence would have been meritless. See State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4. Defendant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR III
"The trial court committed prejudicial and reversible error in the second trial when denying [Defendant's] motion in limine and allowing photographs into evidence."
 {¶ 19} In his third assignment of error, Defendant challenges the trial court's admission of numerous photographs of the scene of Defendant's flight from the police and where the police located the discarded bag of crack cocaine. Defendant maintains that the State failed to establish a foundation for each of the photographs' accurate representation, and specifically, because the photographs were taken approximately six months after the date of Defendant's arrest, they did not provide a fair and accurate representation of the conditions present at the time of the occurrence in question. We disagree.
 {¶ 20} "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage (1987),31 Ohio St.3d 173, paragraph two of the syllabus. Therefore, a trial court's decision on an evidentiary issue will stand absent an abuse of discretion that materially prejudices a party. Dardinger v. Anthem BlueCross Blue Shield, 98 Ohio St.3d 77, 2002-Ohio-7113, at ¶ 193, quoting State v. Hymore (1967), 9 Ohio St.2d 122, 128. An abuse of discretion means more than error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. When applying an abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Freeman v. Crown City Mining, Inc.
(1993), 90 Ohio App.3d 546, 552.
 {¶ 21} "`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Generally, "[a]ll relevant evidence is admissible [.]" Evid.R. 402. However, "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or of misleading the jury." Evid.R. 403(A).
 {¶ 22} During the jury trial, prior to voir dire, Defendant made a motion in limine to exclude State's Exhibits 5 through 18 from being admitted into evidence. Defendant asserted that the photographs, which were not taken until approximately six months after his arrest, were highly prejudicial. The photographs showed several views of where Defendant was stopped, chased and arrested, and several photographs included scenes marked with an "X" with police officers in the photographs. Defendant asserted that the photographs should not be admitted because they were taken in a different season and used different vehicles than Defendant and other individuals who were followed on that day were driving, which rendered the photographs irrelevant. Defendant maintained that because there was conflicting testimony over where the narcotics were found, the photographs tended to bolster or give credibility to the testimony of the officers. Defendant also argued that the use of the photographs recreated the scene without the benefit of cross-examination, as both sides were precluded from informing the jury that this was a retrial.
 {¶ 23} The State asserted that there was nothing to prevent it from presenting different or improved evidence during a retrial as a result of additional investigation, and believed it was up to the jury to assess the obvious discrepancies between the seasons and other differences of the photographs.
 {¶ 24} The trial court decided that the State was not to use the photographs for the purposes of indicating to the jury that the photographs were depicting what had happened on the date of the incident, but were to be used to visually show the jury where the streets were, where the officer was, and where the vehicles were. The photographs were not to be accepted for the truth of what took place on February 16, 2004, but to give the jury a visual idea of the scene. The court noted that the issue of whether the photographs would eventually be admitted into evidence remained undecided. Prior to opening statements, the court modified its decision on the motion in limine. The court concluded that the photographs without an "X" could be used for descriptive purposes, but stated it would be prejudicial for the jury to view the photographs already marked with an "X," which established a predetermined location, without the ability of cross-examination. The trial court record reflects the removal of State's exhibits 10, 11, 13 and 14.
 {¶ 25} We find that all the testimony and other evidence adduced at trial was sufficient to lay a foundation for the introduction of the photographs. As the photographs without the predetermined location "X"s were used for descriptive purposes, and were subject to cross-examination, the trial court did not err by permitting the jury to view such photographs. Defendant's third assignment of error is overruled.
 ASSIGNMENT OF ERROR IV
"The trial court committed error in the second trial by allowing the prosecution's peremptory challenge and excusing the sole African-American juror."
 {¶ 26} In Defendant's fourth assignment of error, he alleges that the prosecution improperly used a peremptory challenge to dismiss the sole African-American prospective juror in violation of Batson v. Kentucky
(1986), 476 U.S. 79, 90 L.Ed.2d 69. He argues that the race-neutral reasons for dismissing the juror was a pretext for eliminating the only African-American juror on the panel. We find the Defendant's fourth assignment of error to be without merit.
 {¶ 27} The Equal Protection Clause of the United States Constitution prohibits deliberate discrimination based on a race by a prosecutor in his exercise of peremptory challenges. Batson, 476 U.S. at 89. Courts are to use a three-part test, as established in State v. Phillips (Nov. 1, 2000), 9th Dist. Nos. 99CA007297 and 99CA007362, at 4-5, to determine whether a peremptory challenge is improperly based on race. A defendant must illustrate a prima facie case of discriminatory use of peremptory challenges: he must show that all the facts and circumstances surrounding the State's exercise of peremptory challenges, used to exclude members of a cognizable group, raised an inference that the State exercised the peremptory challenges based on the exclude jurors' race. State v. Hill
(1995), 73 Ohio St.3d 433, 444-445, citing State v. Hernandez (1992),63 Ohio St.3d 577, 582.
 {¶ 28} Following the defendant's prima facie case, the burden shifts to the State to provide a race-neutral explanation for the peremptory challenge. Hill, 73 Ohio St.3d, at 445. The State's explanation need not be persuasive, nor even plausible. Purkett v. Elem (1995), 514 U.S. 765,767-68, 131 L.Ed.2d 834. "`Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.'" Id. at 768, quoting Hernandez v. New York (1991), 500 U.S. 352,360, 114 L.Ed.2d 395 (plurality opinion).
 {¶ 29} The trial court must determine whether the explanation offered by the State is credible and race-neutral, or is actually just pretext for unconstitutional discrimination. Hernandez, 500 U.S. at 363. The demeanor of the prosecutor exercising the challenges may be the best indicator on the final issue. Id. at 365. As the trial court is in the best position to judge the credibility of the attorney during a Batson
challenge, this court reviews the trial court's determination as to aBatson challenge under a clearly erroneous standard. Id. at 369.
 {¶ 30} In the case at bar, the prosecution used a peremptory challenge to exclude prospective Juror 6, the sole African-American individual on the panel. The judge noted that the mere fact that the juror was the only African-American "in and of itself was not a rationale not to agree to the challenges of the State," but requested that the prosecutor articulate the race-neutral reasons justifying the challenge.
 {¶ 31} The State explained that when it had asked the jurors about their thoughts on the legalization of drugs, particularly cocaine, Juror 6 gave an "off the wall" answer about how cocaine used to be an ingredient in Coca-Cola, but how crack cocaine was not a legalized drug in society because he "believe[d] it is brought about in chemistry labs in universities and many colleges and basements that the stuff is manufactured, and it is induced into society and people get a hold of it." The State stated it was uncomfortable with Juror 6's views on cocaine laws as a result of this answer. The prospective jurors were also asked if they themselves, or any of their family members or friends, had been charged with illegal drug possession. Juror 6 disclosed that his 29-year-old son had been charged with drug possession in Summit County in 2002, but was not convicted because the charges were dropped. When asked by the State if this would affect his ability to be impartial in the case at bar, Juror 6 replied:
"I'd have to say yes or no. That might not be a good answer, but I look at the drug problem as a global thing, and I also look at it as being induced, and they always get the minors and don't get the majors in the background, so, therefore, we catch little Johnny on the street, he is the guy, he is the guy, he is the guy, you know, especially in certain areas.
"Certain neighborhoods, they seem to pick out, again my experience in raising sons. I'm going to be honest, that they never do nail the guy that is really putting it down there, putting it out there."
The State then asked Juror 6 if he, given his life experiences, could listen to all the evidence presented and remain impartial. Juror 6 replied that he could. When articulating his race-neutral explanations for excluding Juror 6, the State informed the court that it was uncomfortable with Juror 6's complaint that the police tend to be satisfied with arresting the minor players in the drug trade instead of going after the major players. The State believed that Juror 6 could have a bias towards Defendant, as there were other co-defendants who were charged, but who were not part of the case against Defendant. Defense counsel objected to the proffered reasons for excusing Juror 6, stating that the State had admitted that the area the juror came from was one of the bases of the peremptory challenge, which went directly to a racial bias.
 {¶ 32} The judge disagreed, stating that he interpreted the juror's statement as being his perception that the police tended to operate in certain areas and that they sought out certain individuals. The judge overruled the objection made by the defense, and Juror 6 was subsequently excused from the panel of prospective jurors. We do not think the judge's finding was clearly erroneous in this case, and overrule Defendant's fourth assignment of error.
 {¶ 33} We overrule Defendant's assignments of error and affirm the judgment of the Summit County Court of Common Pleas.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Whitmore, J., Moore, J., concur.