[Cite as *State v. Hauptstueck*, 2011-Ohio-3502.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

STATE OF OHIO                         :

                                  :      Appellate Case No. 24013

        Plaintiff-Appellee        :

                                  :      Trial Court Case No. 10-CR-90

v.                               :

                                  :

KEITH HAUPTSTUECK         :      (Criminal Appeal from

                                  :       Common Pleas Court)

        Defendant-Appellant     :

                                  :

. . . . . . . . . . .

**O P I N I O N**

Rendered on the 15th day of July, 2011.

. . . . . . . . .

MATHIAS H. HECK, JR., by LAURA M. WOODRUFF, Atty. Reg. #0084161, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422

      Attorneys for Plaintiff-Appellee

GEORGE A. KATCHMER, Atty. Reg. #0005031, 108 Dayton Street, Yellow Springs, Ohio 45387

      Attorney for Defendant-Appellant

. . . . . . . . .

HALL, J.

      {¶ 1} Keith Hauptstueck appeals from his conviction and sentence following a jury

trial on four counts of raping a child under age thirteen, one count of forcible rape, two counts

of gross sexual imposition involving a child under age thirteen, one count of gross sexual imposition by force, and one count of sexual battery.

{¶ 2} Hauptstueck advances eight assignments of error on appeal. First, he contends the prosecutor engaged in misconduct during closing arguments by appealing to jurors' emotions. Second, he claims the trial court erred in allowing the State to introduce inadmissible expert testimony. Third, he asserts that the prosecutor engaged in misconduct by arguing facts not in evidence. Fourth, he alleges that count nine of his indictment, which charged sexual battery, was fatally defective. Fifth, he argues that he received constitutionally ineffective assistance of trial counsel. Sixth, he contends his convictions are against the manifest weight of the evidence. Seventh, he claims the trial court erred in failing to suppress a tape recording of telephone conversations he had with the victim's mother. Eighth, he asserts that cumulative error deprived him of his right to a fair trial.

{¶ 3} The charges against Hauptstueck stemmed from allegations that he had sexually abused his grandson, M.S., on numerous occasions over several years. The victim's mother, T.I., testified at trial that she confronted her son after a friend expressed concerns about an inappropriate relationship between Hauptstueck and the child. Without mentioning Hauptstueck, T.I. and her husband asked M.S. whether "anything inappropriate" was going on and whether he knew what they were talking about. M.S. replied that he did know, and he accused Hauptstueck of sexually abusing him. According to T.I., M.S. told her that Hauptstueck had "been doing it * * * for years."

{¶ 4} After confronting her son, T.I. contacted the police, who began an investigation. While the investigation was proceeding, Hauptstueck periodically called T.I.'s house. T.I.

initially avoided the calls. She then reported the calls to police. Detective Michael Rotterman discussed the issue with T.I. and informed her that she could tape-record her conversations with Hauptstueck. The following day, T.I. gave police a recording of two telephone conversations between herself and Hauptstueck during which he made incriminating admissions about fondling M.S. and engaging in oral sex with the child. After reviewing the tapes, detective Rotterman and another detective interviewed Hauptstueck at the police station. During those interviews, Hauptstueck again admitted sexually molesting M.S on multiple occasions. M.S. also testified at trial and recalled Hauptstueck sexually abusing him at three locations over a period of years. M.S. additionally testified about Hauptstueck possessing a gun and threatening to kill anyone who found out about the abuse.

{¶ 5} After the jury convicted Hauptstueck of the charges set forth above, the trial court imposed an aggregate sentence of sixty-six and one-half years in prison. This appeal followed.

{¶ 6} In his first assignment of error, Hauptstueck contends the prosecutor engaged in misconduct during closing arguments by appealing to jurors' emotions. In particular, he takes issue with remarks the prosecutor made while playing part of a tape recording. The remarks were as follows:

{¶ 7} "I just want to play a couple more clips for you. And these are [T.I.'s] words, and they are quite haunting.

{¶ 8} "(CD played from 11:21 a.m. to 11:22 a.m.)[1]

---

[1] The clips from the CD were not transcribed but they were recorded on the audio/video transcript which we have reviewed. The clips are from the telephone recording between the victim's mother and the defendant which had previously been played to the jury. The portion replayed during the argument is the victim's mother saying the boy feels he is not worth anything, he cuts himself because of

{¶ 9} "[T.I.'s] words that her son will be changed forever, that she's left with a broken child. She thought she took her kids to a safe place, to their grandparents. Her words are haunting, but the Defendant's words convicted him of seven of the nine counts. And the final two counts, common sense convicts the Defendant." (Trial transcript, at 236-237).

{¶ 10} Hauptstueck contends the prosecutor's remarks were objectionable because they were intended to inflame jurors' emotions. We note, however, that defense counsel did not object. Therefore, Hauptstueck has waived all but plain error, which does not exist unless, but for the error, the outcome would have been different and reversal is necessary to prevent a manifest miscarriage of justice. *State v. Davis*, 127 Ohio St. 3d 268, 2010-Ohio-5706. We see no plain error here.

{¶ 11} "The test for prosecutorial misconduct is whether the prosecutor's acts were improper in their nature and character and, if they were, whether the substantial rights of the defendant to a fair trial were prejudiced thereby." *State v. McGonegal* (Nov. 2, 2001), Montgomery App. No. 18639, citing *State v. Smith* (1984), 14 Ohio St.3d 13, 14. "While a prosecutor may not make excessively emotional arguments tending to inflame the jury's sensibilities, the prosecutor is entitled to some latitude in making a closing argument to the jury." *State v. Tibbetts* (2001), 92 Ohio St. 3d 146, 168. In the context of argument about the force element of the two final charges, where the force was not physical but rather subtle or psychological, the child's emotional state could have had some relevance. We are not able to say that the argument was improper.

{¶ 12} Even if defense counsel had objected, the prosecutor's remarks here would not

---

what the defendant has done and she is left with a broken child who she thought she had taken to a safe place, the grandparents' home.

have warranted reversal. In our view, the remarks did not make an excessively emotional appeal to the jurors' emotions. While characterizing T.I.'s words as "haunting," the prosecutor focused on Hauptstueck's own words, which the prosecutor pointed out were enough to convict him on most of the charges. We see no prosecutorial misconduct and certainly no plain error. The first assignment of error is overruled.

{¶ 13} In his second assignment of error, Hauptstueck claims the trial court erred in allowing the State to introduce inadmissible expert testimony. This argument concerns testimony from pediatric psychologist Sarah Greenwell, who explained that adolescent males often delay reporting abuse involving a family member.

{¶ 14} Hauptstueck contends Greenwell's testimony was inadmissible under Evid.R. 703, which provides: "The facts or data in the particular case upon which the expert bases an opinion or inference may be those perceived by the expert or admitted into evidence at the hearing." Hauptstueck also challenges the admissibility of Greenwell's testimony under Evid.R. 705, which states: "The expert may testify in terms of opinion or inference and give the expert's reasons therefor after disclosure of the underlying facts or data. The disclosure may be in response to a hypothetical question or otherwise."

{¶ 15} On appeal, Hauptstueck contends Greenwell was not asked any hypothetical questions. He also notes that she demonstrated no familiarity with the facts of his case, did not refer to any such facts, and did not claim to have reviewed the record. Therefore, he argues that her testimony failed to comply with Evid.R. 703 and Evid.R. 705.

{¶ 16} We are unpersuaded by Hauptstueck's argument. Once again, we are limited to plain-error review as no objection was made below. As set forth above, Greenwell testified

generally about delayed disclosures of sexual abuse, a relevant issue in this case. Although she did not specifically address M.S.'s situation, she identified the types of children who tend to delay reporting and the situations often involved. Greenwell indicated that her testimony was based on her own experience and her review of the "literature." Greenwell adequately identified the basis for her opinions, and she satisfied Evid.R. 703 and Evid.R. 705. See, e.g., *Beard v. Meridia Huron Hosp.*, 106 Ohio St. 3d 237, 241, 2005-Ohio-4787, ¶26. ("Because experts are permitted to base their opinions on their education, including their review of professional literature, training, and experience, it follows that experts are also permitted to testify regarding that information."). The second assignment of error is overruled.

{¶ 17} In his third assignment of error, Hauptstueck asserts that the prosecutor engaged in misconduct by arguing facts not in evidence. In particular, he challenges the prosecutor's statements during closing arguments about the absence of DNA or other physical evidence. Hauptstueck contends no testimony was presented at trial upon which the prosecutor could base an argument regarding such evidence.

{¶ 18} We disagree. Plain-error analysis applies here, too, because defense counsel did not object to the prosecutor's remarks. In any event, the record fails to support Hauptstueck's allegation of prosecutorial misconduct. On cross examination, defense counsel asked two detectives whether they had found any DNA or other physical evidence corroborating M.S.'s allegations. They responded that they had not. On re-direct examination, one of the detectives explained that he did not expect to find physical evidence such as DNA because the allegations involved touching and oral sex performed long before the investigation began. Moreover, defense counsel commented on the lack of DNA evidence in his closing argument.

In light of the testimony and the defense argument, the prosecutor properly addressed the non-existence of DNA or other physical evidence during closing arguments. The third assignment of error is overruled.

{¶ 19} In his fourth assignment of error, Hauptstueck alleges that count nine of his indictment, which charged sexual battery, was fatally defective.

{¶ 20} Count nine alleged that Hauptstueck "did engage in sexual conduct with another, not his spouse, said offender being the other person's natural or adoptive parent, or a stepparent or guardian, custodian, or person in loco parentis of the other person[.]" Hauptstueck claims this charge was flawed because it failed to set forth the facts upon which his "in loco parentis" status was predicated. His argument emanates from *State v. Noggle* (1993), 67 Ohio St.3d 31. There, the Ohio Supreme Court held that "[i]ndictments based upon an alleged offender's status as a person in loco parentis should at least state the very basic facts upon which that alleged status is based." Id. at paragraph two of the syllabus.

{¶ 21} Upon review, we find Hauptstueck's argument to be unpersuasive. As with his other arguments, he failed to raise this one below. Therefore, he has waived all but plain error. *State v. Horner*, 126 Ohio St.3d 466, 2010-Ohio-3830, paragraph three of the syllabus. We find no plain error here.

{¶ 22} The purpose of including a factual basis to support an allegation of in loco parentis status in an indictment is to give a defendant sufficient notice of the charge against him.[2] See *State v. Funk*, Franklin App. No. 05AP-230, 2006-Ohio-2068, ¶49. When an

---

[2]The State suggests that the Ohio Supreme Court implicitly has overruled *Noggle* because more recent cases only have required an indictment to track the language of a statute to be sufficient. The conclusion in *Noggle* that the words "in loco parentis" were not sufficient has not been directly overruled, modified, or criticized by any more recent Ohio Supreme Court cases. Given our disposition of this

indictment charging sexual battery lacks such a factual basis, a bill of particulars can serve the same purpose. *Noggle*, at 34. Here Hauptstueck never requested a bill of particulars. This fact, combined with his failure to object to the language of his indictment and his ability to present a defense at trial, suggests that he was not misled and that he understood the nature of the sexual battery charge against him. Indeed, it is readily apparent to this Court that the factual basis for an in loco parentis finding here was Hauptstueck's status as a grandparent with whom M.S. visited and spent the night. A grandparent is significantly different from the teacher/coach relationship in *Noogle* or the family-friend/houseguest in *Funk*. Because Hauptstueck was a grandparent, and because the evidence supports a finding of in loco parentis status, we find no plain error in his indictment's omission of specific basic facts to support that status. Accordingly, the fourth assignment of error is overruled.

{¶ 23} In his fifth assignment of error, Hauptstueck argues that he received constitutionally ineffective assistance of trial counsel. In particular, he criticizes his attorney for failing to object to count nine of his indictment, to pediatric psychologist Greenwell's expert testimony, or to the prosecutor's closing argument.

{¶ 24} To prevail on his claim, Hauptstueck must show deficient performance and resulting prejudice. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. To establish deficiency, he must show that counsel's representation fell below an objective standard of reasonableness. Id. To show prejudice, he must demonstrate that counsel's deficiency impacted the judgment against him. *State v. Bradley* (1989), 42 Ohio St.3d 136. Reversal is warranted if there is a reasonable probability that, but for counsel's

---

assignment of error on other grounds, we decline to determine whether *Noggle* has been implicitly overruled.

deficient performance, the result of the proceeding would have been different. Id.

{¶ 25} Upon review, we conclude that Hauptstueck cannot prevail on his ineffective-assistance claim. In our analysis above, we concluded that he was not prejudiced by his indictment's omission of basic facts supporting an in loco parentis allegation in count nine. Moreover, with regard to Greenwell's testimony, we held that it was not objectionable under Evid.R. 703 or Evid.R. 705. We also found nothing objectionable about the challenged portion of the prosecutor's closing argument. In light of these determinations above, Hauptstueck has failed to establish any deficient performance by his trial counsel that prejudiced him. His fifth assignment of error is overruled.

{¶ 26} In his sixth assignment of error, Hauptstueck contends his convictions are against the manifest weight of the evidence. In support, he notes that M.S. failed to report any abuse for years and ultimately did so only after being questioned by his mother. Hauptstueck also stresses M.S.'s inability to recall specific dates or the number of times sexual abuse took place. He additionally points to evidence that T.I. once caught M.S. viewing "gay pornography" on the internet. Hauptstueck attributes M.S.'s allegations of abuse to the child having viewed this pornography.

{¶ 27} When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387 (citations omitted). A judgment should be reversed

as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin* (1983), 20 Ohio App.3d 172, 175.

{¶ 28} Having reviewed the record, we do not find that Hauptstueck's convictions are against the weight of the evidence. M.S. testified about incidents of abuse occurring at three locations over a period of years. The jury heard recorded telephone conversations between Hauptstueck and T.I. during which he admitted sexually abusing M.S. The jury also watched a recording of Hauptstueck's interview at the police station during which he again admitted molesting M.S. on multiple occasions.

{¶ 29} With regard to M.S.'s delay in reporting the abuse, the State presented testimony from pediatric psychologist Greenwell, who explained why adolescent males often delay reporting abuse involving a family member. As for M.S.'s inability to recall certain specifics, his lack of recall is not surprising given the length of time involved. Finally, the jury was free to reject Hauptstueck's theory that M.S. may have fabricated the sexual-abuse allegations after viewing internet pornography. In light of M.S.'s testimony, and Hauptstueck's recorded confessions, the jury did not clearly lose its way and create a manifest miscarriage of justice when it found him guilty. The evidence does not weigh heavily against Hauptstueck's convictions. The sixth assignment of error is overruled.

{¶ 30} In his seventh assignment of error, Hauptstueck claims the trial court erred in failing to suppress the tape recording of his telephone conversations with T.I. In support, he contends detective Rotterman induced T.I. to record the conversations. Therefore, he reasons that T.I. was acting as a government agent and that a warrant was required before she could

tape the conversations.

{¶ 31} Hauptstueck's argument lacks merit for at least two reasons. First, the record does not establish that T.I. was acting as a State agent when she recorded the calls. Detective Rotterman did not instruct her to record any conversations, did not provide her with a recording device, did not arrange the conversations, and was not present when they occurred. The detective simply told her that she could talk to Hauptstueck on the telephone and suggested that she might want to record the conversation. We are unpersuaded that this advice transformed T.I. into an agent of the State for Fourth Amendment purposes.

{¶ 32} Second, Hauptstueck's argument is unpersuasive even assuming, purely arguendo, that T.I. did qualify as a State agent. We are aware of no authority that precludes a law-enforcement officer or other government agent from speaking to a suspect on the telephone and recording the conversation without a warrant. Although Hauptstueck generally cites R.C. 2933.51, et. seq., Ohio's electronic surveillance law, nothing therein precluded T.I. from recording her telephone conversations with him. The statute generally prohibits the warrantless interception of wire, oral, or electronic communications. It does not apply, however, to a law-enforcement officer who "intercepts a wire, oral, or electronic communication, if the officer is a party to the communication[.]" R.C. 2933.52(B)(3). Nor does the statute apply to "[a] person who is not a law enforcement officer and who intercepts a wire, oral, or electronic communication, if the person is a party to the communication[.]" R.C. 2933.52(B)(4). The upshot of these exceptions is that T.I. was not prohibited from recording her conversations without a warrant because she was a party to the conversations. For this additional reason, the seventh assignment of error is overruled.

{¶ 33} In his eighth assignment of error, Hauptstueck raises a claim of cumulative error. He contends the effect of the errors alleged in his first seven assignments of error, even if individually harmless, cumulatively deprived him of a fair trial.

{¶ 34} It is true that separately harmless errors may violate a defendant's right to a fair trial when the errors are aggregated. *State v. Madrigal* (2000), 87 Ohio St.3d 378, 397. To find cumulative error, we first must find multiple errors committed at trial. Id. at 398. We then must find a reasonable probability that the outcome below would have been different but for the combination of separately harmless errors. *State v. Thomas* (Sept. 21, 2001), Clark App. No.2000-CA-43. In our review of Hauptstueck's other arguments, however, we found no multiple errors. Therefore, we find no cumulative error. The eighth assignment of error is overruled.

{¶ 35} The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . . .

FAIN, J., concurs.

FROELICH, J., concurring:

{¶ 36} I concur, but I would find the separate playing of and commenting on the "haunting" excerpt to be inappropriate and possibly error. Its effect was to emphasize a mother's emotional explanation of the harm and pain suffered by her and her child rather than whether the State had proved the Appellant guilty beyond a reasonable doubt.

{¶ 37} However, I agree with the majority that such actions were not plain error and that the failure to object did not constitute ineffective assistance; the lack of objection may

well have been a decision by counsel not to draw attention to the statements. Further, even if an objection had been made, the playing of the recording and the prosecutor's brief remark did not deprive the Appellant of a fair trial.

. . . . . . . . . .

Copies mailed to:

Mathias H. Heck, Jr.
Laura M. Woodruff
George A. Katchmer
Hon. Barbara P. Gorman