[Cite as *State v. Payne*, 2013-Ohio-5230.]

STATE OF OHIO )   IN THE COURT OF APPEALS
                )ss:   NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT )

STATE OF OHIO                    C.A. No.    26655

    Appellee

    v.                          APPEAL FROM JUDGMENT
                                 ENTERED IN THE
BROLIN D. PAYNE                  COURT OF COMMON PLEAS
                                 COUNTY OF SUMMIT, OHIO
    Appellant                    CASE No.    CR 12 01 0028

DECISION AND JOURNAL ENTRY

Dated: November 27, 2013

MOORE, Presiding Judge.

{¶1}   Defendant, Brolin Payne, appeals from the judgment of the Summit County Court of Common Pleas.  We affirm.

I.

{¶2}   On January 17, 2012, the Summit County Grand Jury indicted Mr. Payne, charging him with one count of rape in violation of R.C. 2907.02(A)(1)(b) and one count of gross sexual imposition in violation of R.C. 2907.05(A)(4).  These charges stemmed from alleged offenses committed by Mr. Payne against an eight-year-old child, K.B., during the time period between August 1, 2001 and January 31, 2002.

{¶3}   Mr. Payne pleaded not guilty, and he filed a demand for the State to produce discovery.  As part of the State's response, it produced an audio recording of what it termed a "one party consent call" between K.B., who was then nineteen years old, and Mr. Payne. Detective Rex Lott of the Akron Police Department had recorded this call.  Mr. Payne moved to

suppress the recording, arguing that the call was made in violation of R.C. 2933.52, and that Mr. Payne's statements made during the telephone conversation amounted to an involuntary confession. Thereafter, the trial court held a hearing on the motion to suppress. During Detective Lott's testimony at the suppression hearing, he referenced and produced a sheet of paper on which he had made notes for K.B. during the call. This document was admitted into evidence as a court exhibit. The document consists of a ruled sheet of paper containing the following handwritten notes:

12-29 @ 17:25

We have a problem.

Let him talk

What should I say when they ask …

R U still there?

They already know.

& they know about [name omitted]

Most of it

Finger in lick

What is the time limit

Statute of limitations

Gotta go Jod[y]'s coming

Further, the question of "Do u know," is written vertically in the left margin of the paper. The recording of the telephone conversation was also admitted into evidence. During the telephone conversation, K.B. informed Mr. Payne that another individual, "Jody," had become aware of what had happened between K.B. and Mr. Payne. K.B. informed Mr. Payne that she did not know what to do, because she was concerned that Mr. Payne would get into trouble. K.B.

testified that this was part of a ruse that she had utilized in conducting the call in order to elicit responses from Mr. Payne. During the conversation, K.B. referenced most of the phrases set forth in the detective's handwritten notes. She asked Mr. Payne for advice on what to say to the authorities, asked if he was still there, advised him that "they know most of it" and that she told Jody "about the fingering and the licking[.]" K.B. then asked Mr. Payne if he knew what the statute of limitations was, and she ended the call by saying that she had to go because Jody was coming. In response to K.B.'s statements and questions, Mr. Payne did not directly admit or deny any allegations; however, he advised K.B. that she did not have to say anything to the police, and the police could not do anything if she did not say anything. He did not ask her to what she was referring when she commented on "what happened" between them ten years ago or specifically that she had told Jody about "the fingering and the licking[.]" Further, Mr. Payne apologized to K.B., saying that he "didn't mean for things to go the way that they did," and telling her that he loved and cared about her.

{¶4} After the suppression hearing, Mr. Payne filed a motion in limine, asking the court to exclude the telephone conversation from evidence at trial, arguing that the State had withheld documentation which was material to his defense by failing to turn over Detective Lott's notes in response to the demand for discovery. The trial court held a hearing on Mr. Payne's motion in limine. Thereafter, the trial court denied Mr. Payne's motions to suppress and in limine.

{¶5} The case proceeded to a jury trial. During voir dire, the State peremptorily challenged the only African-American venireperson. The State provided purportedly race-neutral grounds for excusing the juror in anticipation of a *Batson* objection to the State's use of

its peremptory challenge. Mr. Payne objected to the use of the challenge, and, after hearing from the parties, the trial court overruled Mr. Payne's objection and excused the potential juror.

{¶6} During the trial, K.B. testified to several incidents of sexual behavior between Mr. Payne and herself. She then identified the recording of her conversation and Detective Lott's notes made during the conversation. The recorded telephone conversation was played to the jury. At the close of the State's case, the recording was admitted into evidence over Mr. Payne's objection, and the detective's notes also were admitted as an exhibit. Mr. Payne then testified on his own behalf, denying much of the behavior alleged by K.B.

{¶7} After deliberating, the jury found Mr. Payne guilty on both counts contained in the indictment. In a sentencing entry issued on September 10, 2012, the trial court sentenced Mr. Payne to a total period of incarceration of twenty-five years to life. Mr. Payne timely filed a notice of appeal from the sentencing entry, and he now presents two assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT COMMITTED PLAIN ERROR AND ABUSED ITS DISCRETION IN ALLOWING THE "ONE-PARTY CONSENT CALL" TO BE ADMITTED AS AN EXHIBIT AND TESTIMONY BY WITNESSES CONCERNING THE SAME WHERE THE STATE OF OHIO UNDER CRIM.[R.] 16 AND CRIM.[R.] 12 FAILED TO DISCLOSE MATERIALS RELATED TO THE "ONE-PARTY CONSENT CALL" THAT WERE ESSENTIAL IN PREPARATION OF [MR.] PAYNE'S DEFENSE. THIS FAILURE TO DISCLOSE EVIDENCE LED TO THE DENIAL OF [MR.] PAYNE'S RIGHT TO A FAIR TRIAL.

{¶8} In his first assignment of error, Mr. Payne argues that he was denied a fair trial because the trial court admitted evidence of, and allowed testimony pertaining to, the recorded

telephone conversation despite the State's failure to provide Detective Lott's notes in response to the demand for discovery. We disagree.

{¶9} Questions regarding the admission or exclusion of evidence are within the trial court's discretion. *State v. Sage*, 31 Ohio St.3d 173, 180 (1987). The term abuse of discretion implies that the court's attitude is unreasonable, arbitrary or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980). However, "a court's ruling on a motion in limine does not preserve issues related to evidentiary rulings for appeal." *State v. Garfield*, 9th Dist. Lorain No. 09CA009741, 2011-Ohio-2606, ¶ 55. "The law is well settled that failure to contemporaneously object during the identification of [evidence] and testimony regarding it forfeits appellate review." *State v. Rice*, 9th Dist. Summit No. 26116, 2012-Ohio-2174, ¶ 20 quoting *State v. Cross*, 9th Dist. Summit No. 25487, 2011-Ohio-3250, ¶ 49.

{¶10} Here, although Mr. Payne filed a motion in limine pertaining to the recorded conversation, and he objected to the recording at the admission phase of trial after the State rested, he did not object contemporaneously when the State identified the recording through Detective Lott's and K.B.'s testimony. *See Rice* at ¶ 21. Accordingly, Mr. Payne has forfeited his argument pertaining to admission of the recording save for that of plain error. *See id.* Notice of a plain error is taken with the utmost caution and only to prevent a manifest miscarriage of justice. *State v. Bray*, 9th Dist. Lorain No. 03CA008241, 2004-Ohio-1067, ¶ 12. Therefore, we will not reverse the trial court decision based upon plain error unless it has been established that the trial court outcome clearly would have been different but for the alleged error. *Id.*

{¶11} Mr. Payne argues that the trial court committed plain error in admitting evidence of, and testimony pertaining to, the telephone conversation because Detective Lott's notes pertaining to the conversation were not provided to Mr. Payne in response to his demand for

discovery. Mr. Payne maintains that, had he received the notes prior to moving to suppress the evidence of the telephone conversation, he could have successfully argued that suppression was warranted on the basis that K.B. was acting as an "agent of the state." Mr. Payne premises his argument on Crim.R. 16(B), the Second District's decision in *State v. Hauptstueck*, 2d Dist. Montgomery No. 24013, 2011-Ohio-3502, and R.C. 2933.52.

{¶12} In his motion in limine, Mr. Payne argued that the State was required to produce Detective Lott's notes pursuant to Crim.R. 16(B), which provides, in relevant part:

> Upon receipt of a written demand for discovery by the defendant, and except as provided in * * * this rule, the prosecuting attorney shall provide copies or photographs, or permit counsel for the defendant to copy or photograph, the following items related to the particular case indictment, information, or complaint, and which are material to the preparation of a defense, or are intended for use by the prosecuting attorney as evidence at the trial, or were obtained from or belong to the defendant, within the possession of, or reasonably available to the state * * *:
>
> * * *

(5) Any evidence favorable to the defendant and material to guilt or punishment[.]

"Potentially exculpatory evidence subject to disclosure under Crim.R. 16 is material 'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *State v. Iacona*, 9th Dist. Medina No. CA 2891-M, 2000 WL 277911, *5 (Mar. 15, 2000), quoting *State v. Johnston*, 39 Ohio St.3d 48 (1988), paragraph five of the syllabus.

{¶13} Mr. Payne argues that the detective's notes were favorable to him and material to his defense, because, through the notes, he could establish that K.B. was following a "script," which in turn made her an "agent of the state." In his merit brief, Mr. Payne argues that an agent of the state may not intercept a wire, oral or electronic communication without a warrant. In support of this proposition, Mr. Payne relies on R.C. 2933.52 and the Second District's holding

in *Hauptstueck.* Assuming without deciding that the State was required to produce the detective's notes in response to Mr. Payne's demand for discovery, we are not persuaded by Mr. Payne's argument that the trial court committed plain error in failing to exclude the evidence of the conversation on the basis that it was intercepted in violation of R.C. 2933.52.

{¶14} R.C. 2933.52(A)(1) provides that "[n]o person purposely shall * * * intercept * * * a wire, oral, or electronic communication[.]" However, this prohibition does not apply to the interception of communications where a party to the communication intercepts the communication, or where the party provides advance consent to another to intercept the call. R.C. 2933.52(B)(4). Likewise, the prohibition does not apply to a law enforcement officer who is a party to the call. R.C. 2933.52(B)(3). Evidence of a communication intercepted in violation of R.C. 2933.52 is subject to suppression. *See* R.C. 2933.62(A), and R.C. 2933.63(A).

{¶15} In *Hauptstueck*, 2011-Ohio-3502, the Second District reviewed R.C. 2933.52. In that case, the mother of a sexual assault victim recorded telephone calls between herself and the defendant after an officer advised her that she was permitted to do so. *Id.* at ¶ 4. The defendant was convicted of multiple counts related to the sexual assault of the victim, and he appealed his convictions to the Second District. *Id.* at ¶ 1. As part of his argument on appeal, the defendant contended that the telephone recordings should have been suppressed because the victim's mother, following the advice of the officer, acted as a government agent, and a warrant was required for the mother to record the conversations. *Id.* at ¶ 30. The Second District rejected this argument, concluding that it "lack[ed] merit for at least two reasons." *Id.* at ¶ 31. First, the court determined that the victim's mother was not acting as a government agent. *Id.* In making this determination, the Second District noted that the officer "did not instruct her to record any conversations, did not provide her with a recording device, did not arrange the conversation, and

was not present when they occurred." *Id.* Second, the Second District concluded that the defendant's argument was "unpersuasive even assuming, purely arguendo, that [the victim's mother] did qualify as a State agent." *Id.* at ¶ 32. The Second District stated that it was "aware of no authority that precludes a law enforcement officer or other government agent from speaking to a suspect on the telephone and recording the conversation without a warrant." *Id.* at ¶ 32.

{¶16} In his merit brief, Mr. Payne has relied on *Haupstueck* for the proposition that the exception allowing interception of a communication in R.C. 2933.52(B)(3) "does not apply to a law[ ]enforcement officer who intercepts a wire, oral, or electronic communication, if the officer is not a party to the communication and the consenting party is an agent of the state." However, the Second District did not determine that the R.C. 2933.52(B)(3) exception would not be applicable to a consenting party who is an agent of the state. *See generally Hauptstueck.* Instead, it concluded that, *even if the consenting party were a government agent*, the Second District knew of no law which would preclude the consenting party from recording the conversation. *Id.* at ¶ 32. Similarly, here we cannot discern how the categorization of K.B. as a government agent would result in a violation of R.C. 2933.52. *See id.* Consequently, we cannot say that, reviewing this challenge on a plain error standard, had the detective's notes been supplied with the State's response to discovery, that the evidence of the telephone call would have been suppressed, or that the outcome of the proceeding would have been different.

{¶17} Accordingly, the trial court did not commit plain error in admitting the recording into evidence, and Mr. Payne's first assignment of error is overruled.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND ABUSED ITS DISCRETION BY DENYING THE BATSON CHALLENGE SUBMITTED BY [MR.] PAYNE.

{¶18} In his second assignment of error Mr. Payne argues that the trial court erred in overruling his *Batson* objection to the State's peremptory challenge of a prospective juror. We disagree.

{¶19} "Although a prosecutor ordinarily is entitled to exercise permitted peremptory challenges for any reason at all, as long as that reason is related to his view concerning the outcome of the case to be tried, the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race[.]" (Internal citations and quotations omitted.) *Batson v. Kentucky*, 476 U.S. 79, 89 (1986). A defendant has a "right to be tried by a jury whose members are selected by nondiscriminatory criteria," and a defendant's own race "is irrelevant to a defendant's standing to object to the discriminatory use of peremptory challenges." *Powers v. Ohio*, 499 U.S. 400, 404, 416 (1991). This Court reviews whether a party exercised its peremptory challenges in a discriminatory manner under the clearly erroneous standard. *Hernandez v. New York*, 500 U.S. 352, 364-65 (1991); *see also State v. Vinson*, 9th Dist. Summit No. 23739, 2007-Ohio-6045, ¶ 21, and *Akron v. Burns*, 9th Dist. Summit No. 21338, 2003-Ohio-3785, ¶ 15.

{¶20} Courts employ a three-part test to determine whether a peremptory challenge is based on race. *State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, ¶ 106; *State v. Jones*, 9th Dist. Summit No. 22231, 2005-Ohio-1275, ¶ 27. First, the defendant must establish a prima facie case of discriminatory use of peremptory challenges by the prosecution. *Batson* at 96-97.

{¶21} Second, after the defendant makes his prima facie case, the burden shifts to the prosecution to provide a race-neutral explanation for the peremptory challenge. *Id.* at 97. To meet its burden, "the prosecutor must give a clear and reasonably specific explanation of his legitimate reasons for exercising the challenge[.]" (Internal citations and quotations omitted.) *Batson* at 98, fn. 20. This explanation must be "based on something other than the race of the juror." *Hernandez* at 360. However, the prosecution does not have to provide "an explanation that is persuasive, or even plausible." *Purkett v. Elem*, 514 U.S. 765, 768 (1995). "[T]he issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral." (Quotations and citation omitted.) *Id.* "Unlike challenges for cause, a peremptory challenge may be exercised for *any* racially-neutral reason." (Emphasis sic.) *State v. Moss*, 9th Dist. Summit No. 24511, 2009-Ohio-3866, ¶ 12.

{¶22} In the third step of the *Batson* analysis, the trial court must determine whether, under all the relevant circumstances, the defendant has met his burden of proving purposeful racial discrimination. *Batson* at 96-97. The trial court must consider the persuasiveness and credibility of the justification offered by the prosecution. *Hicks v. Westinghouse Materials Co.*, 78 Ohio St.3d 95, 99 (1997), citing *Purkett* at 768. It must determine whether the neutral explanation offered by the prosecution is credible or is instead a pretext for unconstitutional discrimination. *Hernandez* at 363. The trial court's finding turns largely on evaluations of credibility and is given great deference. *Batson* at 98, fn. 21.

{¶23} Here, the State exercised a peremptory challenge to excuse Juror No. 16, an African-American man. The State indicated that it anticipated a *Batson* challenge from the defense, and it provided the following as racially-neutral reasons in support of its challenge: (1)

Juror No. 16 had acknowledged that he had been a witness in a murder case and (2) Juror No. 16 was the acquaintance of a juvenile who had been indicted for the rape of a three-year old. Thereafter, Mr. Payne did raise a *Batson* challenge, and, after hearing from both parties, the trial court determined that the State's bases for challenging the prospective juror were race-neutral, and it overruled Mr. Payne's objection.

{¶24} On appeal, Mr. Payne has set forth the law applicable to a *Batson* analysis, and he has set forth the race-neutral reasons provided by the State as set forth above. However, although Mr. Payne maintains that the trial court's decision to overrule his objection was "clearly an erroneous ruling," he has developed no argument demonstrating clear error. As this Court has repeatedly held, "[i]f an argument exists that can support [an] assignment of error, it is not this [C]ourt's duty to root it out." *Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998). Therefore, this Court declines to create such an argument on Mr. Payne's behalf. *See* App.R. 16(A)(7) (appellant's brief to include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions").

{¶25} Accordingly, Mr. Payne's second assignment of error is overruled.

### III.

{¶26} Mr. Payne's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

---

CARLA MOORE
FOR THE COURT


HENSAL, J.
CONCURS.

CARR, J.
CONCURS IN JUDGMENT ONLY.


APPEARANCES:

STEPHANIE YUHAS, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.