The STATE of Ohio, Appellant,

v.

ROBERTS, Appellee.

[Cite as *State v. Roberts* (2001), 141 Ohio App.3d 578.]

Court of Appeals of Ohio,
Sixth District, Wood County.

No. WD–00–035.

Decided March 23, 2001.

*Alan R. Mayberry*, Wood County Prosecuting Attorney, and *Jacqueline M. Kirian*, Assistant Prosecuting Attorney, for appellant.

---

PIETRYKOWSKI, Presiding Judge.

This case is before the court on the state of Ohio's appeal from the Wood County Court of Common Pleas, which granted a motion for new trial and motion for reconsideration filed by appellee Ryan Roberts. For the reasons that follow, we reverse.

On or about January 26, 1996, Bowling Green State University ("BGSU") police officer Mark Reef confiscated, among other things, fifty doses of lysergic acid diethylamide ("LSD") from appellee's dormitory room. Officer Reef did not arrest appellee but instead asked appellee to report to the BGSU Police Department the following day. The following day, or soon after, appellee met with Officer Reef and Sergeant Charles Lewis, also from the BGSU Police Department. At this meeting, the officers gave appellee the option of working for the police as a confidential informant. Appellee agreed to work as a confidential informant, and within a couple of weeks the campus police officers introduced appellee to Detective Doug Hartman of the Bowling Green Police Department. Hartman was to assist appellee in carrying out his duties as a confidential informant. Appellee testified that the officers told him that if he made two controlled drug buys from each of four people, he would not be prosecuted for the LSD found in his room. The officers, on the other hand, testified that they made no promises whatsoever about the charges, though Officer Reef testified that he told appellee that he could make a recommendation about the charges to the prosecutor, who makes the final decisions.

Throughout the late winter and spring of 1996, appellee made two controlled buys from one person and one from another. He purchased relatively small amounts of marijuana and psilocybin mushrooms. When appellee left school to return home to Oregon, Ohio, for the summer, he agreed to attempt more controlled buys in Oregon. To that end, Detective Hartman introduced appellee to an officer at the Oregon Police Department. However, appellee was not successful in making any buys; appellee testified that he had tentatively set up some buys, but the Oregon police officer never returned his pages. On January 8, 1997, appellee was indicted for possessing LSD in violation of R.C. 2925.03, a second degree felony.

On May 7, 1997, appellee filed a "Motion to Establish and Enforce Plea

Agreement."[1] As appellee understood the agreement, he would not be prosecuted if he completed the required number of controlled buys. According to appellee, he completed some of the buys but could not complete all of them because he did not have cooperation from the Oregon Police Department. Appellant also argued that he did not have the benefit of an attorney before entering into the agreement and that he put himself at risk in conducting the buys and received no benefit from it. After conducting an evidentiary hearing, the trial court denied this motion, finding that, while an agreement existed between appellee and the police, and while appellee substantially complied with the terms of the agreement, the agreement was not binding on the state.

The case was tried to the court on December 16 and 17, 1997, and the court found appellee guilty on December 18, 1997. On April 6, 1998, the trial court sentenced appellee under Senate Bill 2 to an eight-month term of imprisonment. The state appealed the sentencing order to this court on April 14, 1998, and on May 6, 1998, appellee appealed the guilty verdict to this court. In his appeal, appellee argued that the trial court erred in not enforcing the agreement between the police and him and that the trial court erred in not suppressing the chemical analysis of the drugs found in his room.

On April 30, 1999, this court issued its decision and judgment entry. As for the state's appeal, this court held that the trial court erred in sentencing appellant under Senate Bill 2 when the offense occurred prior to the enactment of Senate Bill 2. As to appellee's appeal, this court held that the trial court did not err in denying appellee's motion to enforce the agreement and in admitting the evidence of the chemical analysis. See *State v. Roberts* (Apr. 30, 1999), Wood App. No. WD–98–025, unreported, 1999 WL 253231.

Meanwhile, during the pendency of the appeal, the state presented evidence before the grand jury against one of the individuals who sold drugs to appellee during one of appellee's controlled buys. Appellee was subpoenaed to testify. Believing that the state was ratifying the purported agreement by requiring his testimony about one of the controlled buys, appellee, on May 6, 1998, moved for new trial for the purpose of having the trial court reconsider its decision denying appellee's motion to enforce the agreement. The trial court refused to rule on this motion, finding that it lacked jurisdiction to do so because of the pending appeal. In a decision filed July 16, 1998, this court denied appellee's motion to have the case remanded for the trial court to consider the new trial motion.

After this court's decision of April 30, 1999, appellee filed a notice of appeal with the Supreme Court of Ohio. However, on September 30, 1999, the Supreme

---

1. "Plea" agreement is a misnomer. Throughout this decision, we shall refer to the agreement in question as simply "the agreement."

Court dismissed the appeal for want of prosecution. Following the Ohio Supreme Court's dismissal of the case, appellee filed another new trial motion on February 29, 2000. The trial court held a hearing on the motion. On April 12, 2000, the trial court filed a judgment entry granting appellee's motion for new trial, and it reconsidered its prior decision denying appellee's motion to enforce the agreement. Upon reconsideration, the trial court found that the state had ratified the agreement and was therefore bound by it. Accordingly, the trial court granted appellee's motion to enforce the agreement, vacated appellee's guilty verdict, and dismissed the indictment. On June 29, 2000, we granted leave for the state to appeal that portion of the trial court's decision granting appellee's motion for new trial, granting appellee's motion to reconsider, granting appellee's motion to enforce the plea agreement, and vacating the guilty verdict. The state appeals as of right the portion of the trial court's decision dismissing the indictment.

Appellant's sole assignment of error is as follows:

"The trial court erred in concluding that the State had ratified the cooperation agreement entered into between Ryan J. Roberts and City of Bowling Green police officers."

Appellant advances three arguments in favor of its assignment of error: (1) that the new trial motion was untimely; (2) that the state did not intend to ratify the agreement and that it did not receive any benefit from the agreement; (3) that the agreement could not have been ratified in May 1998 (when appellee was subpoenaed to testify before the grand jury) because the agreement had long since terminated; and (4) that the agreement is unenforceable as against public policy. We will first address the timeliness issue.

The decision whether to grant a motion for new trial pursuant to Crim.R. 33 is within the sound discretion of the trial court. *State v. Schiebel* (1990), 55 Ohio St.3d 71, 564 N.E.2d 54, paragraph one of the syllabus. Appellee apparently moved for new trial under Crim.R. 33(A)(6), which allows for a new trial when a party discovers new evidence. That rule provides:

"(6) When new evidence material to the defense is discovered, which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case. The prosecuting attorney may produce affidavits or other evidence to impeach the affidavits of such witnesses."

The time for filing a new trial motion for newly discovered evidence is set out in Crim.R. 33(B), which provides:

"* * * Motions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered, or the decision of the court where trial by jury has been waived. If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period."

■ Here, appellee filed his motion for new trial on May 6, 1998, more than one hundred twenty days after the trial court's December 18, 1997 judgment entry finding appellee guilty. However, it could not be ruled upon at that time because the case was pending on appeal both here and, later, in the Ohio Supreme Court. Arguably, appellee's first chance to file a second motion for new trial was on September 30, 1999, when the Supreme Court dismissed his appeal. However, appellee did not file his second motion for new trial until February 29, 2000, again more than one hundred twenty days after the Supreme Court's dismissal. Moreover, although Crim.R. 33(B) allows for a party to move for new trial after the one-hundred-twenty-day period has expired, a party may do so only after proving by clear and convincing evidence that he was unavoidably prevented from discovering such evidence. In such a case, the party must seek an order from the court finding that the party was unavoidably prevented from discovering the evidence, and the party must file his or her motion within seven days of the order. Here, appellee did not seek such an order. There is simply no construction of the facts of this case that would allow us to conclude that appellee's February 29, 2000 new trial motion was timely.

■ The trial court appeared to recognize that appellee's motion was untimely, but it noted in its judgment entry that, as a matter of policy, cases are to be decided on their merits instead of on procedural technicalities. We do not dispute this point as a general matter, but in the particular case of a Crim.R. 33 motion, a trial court is simply without discretion to extend the time limit. See Crim.R. 45(B); *State v. Barnes* (Dec. 30, 1999), Clermont App. No. CA99–06–057, unreported, 1999 WL 1271665. Accordingly, we can only conclude that the trial court abused its discretion in entertaining appellee's untimely February 29, 2000 motion for new trial. We find appellant's assignment of error well taken.

On consideration whereof, this court finds that substantial justice has not been done the party complaining, and the decision of the Wood County Court of

Common Pleas is reversed and remanded for proceedings consistent with this decision. Appellee is ordered to pay the court costs of this appeal.

*Judgment reversed*
*and cause remanded.*

MELVIN L. RESNICK and KNEPPER, JJ., concur.