[Cite as *State v. Tubbs*, 2013-Ohio-4391.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI   COUNTY

STATE OF OHIO                                :
                                             :        Appellate Case No. 2012-CA-20
           Plaintiff-Appellee                :
                                             :        Trial Court Case No. 12-CR-32
v.                                           :
                                             :
AARON TUBBS                                  :        (Criminal Appeal from
                                             :         Common Pleas Court)
           Defendant-Appellant               :
                                             :

· · · · · · · · · ·

O P I N I O N

Rendered on the 30th day of September, 2013.

· · · · · · · · · ·

ROBERT E. LONG, III, Atty. Reg. #0066796, Miami County Prosecutor's Office, 201 West Main Street – Safety Building, Troy, Ohio 45373
           Attorney for Plaintiff-Appellee

MARCY A. VONDERWELL, Atty. Reg. #0078311, Finlay, Johnson & Beard LTD, 260 North Detroit Street, Xenia, Ohio 45385
           Attorney for Defendant-Appellant

AARON D. TUBBS, #A668765, Lebanon Correctional Institution, Post Office Box 56, Lebanon, Ohio 45036
           Defendant-Appellant, *pro se*

· · · · · · · · · · · ·

HALL, J.,

{¶ 1}   Aaron Tubbs appeals from his conviction and sentence on charges of attempted murder, aggravated robbery, drug trafficking, having a weapon while under disability, and a firearm specification.

{¶ 2}   Tubbs' appointed appellate counsel has filed a brief raising one assignment of error. It alleges that Tubbs' due process rights were violated by the State's failure to preserve potentially exculpatory evidence. After counsel filed this brief, Tubbs moved to strike it and requested permission to proceed pro se.  Tubbs also filed a pro se appellate brief raising five assignments of error, one of which repeats, verbatim, the assignment of error raised by appointed appellate counsel. On April 8, 2013, this court filed an entry indicating that it would defer ruling on Tubbs' motion to strike counsel's brief, to remove counsel, and to proceed pro se until after submission of his appeal.

{¶ 3}   We now sustain Tubbs' motion. We grant his request for removal of appointed appellate counsel and hereby allow him to proceed pro se. In so ruling, we note that Tubbs cannot possibly be prejudiced by representing himself in this submitted appeal because his pro se brief contains the same assignment of error advanced by appointed appellate counsel, along with four additional assignments of error. Accordingly, for purposes of our analysis herein, we will address only Tubbs' pro se brief. Although appointed appellate counsel's brief will remain part of the record, we will not consider it.

{¶ 4}   Having resolved the foregoing issue, we turn now to the merits of Tubbs' appeal. The record reflects that the charges against him stemmed from his alleged participation in a planned drug transaction. The victim, Michael Butts, testified at trial that he agreed to purchase one and a half pounds of marijuana from Tubbs for $1,600. Although the two men were not

friends, Butts was familiar with Tubbs, who he knew only by the street name Lil' Homie. According to Butts, the two men agreed to meet at Fountain Park in Piqua to complete the transaction. Butts testified that he and Tubbs arrived at the location in separate cars. Butts remained in his car, which Tubbs approached on foot. Tubbs reached through the open passenger-side window and placed a book bag on the front seat of Butts' car. When Butts started to look inside the book bag, Tubbs shot him several times and took $1,600 from Butts' car without leaving any marijuana. Two eyewitnesses, Gregory Scholl and Lacey Reed, were in the park and observed the shooting. Because it was dark, they were unable to identify the shooter. Reed did testify, however, that the shooter left the scene in a green car. Another witness, Kelly Long, lived across the street from Fountain Park. She testified that she saw a green car "quickly" driving away after the gunshots.

{¶ 5} Tubbs' friend Jennifer Douglas called 911 on the night of the shooting to report that Tubbs had borrowed her green Ford Taurus and had not returned it. The vehicle later was discovered blocks from the crime scene and returned to Douglas. The State also presented evidence of numerous phone calls and text messages between Butts' phone and a phone number linked to Tubbs. The calls and texts occurred prior to the shooting, and the text messages addressed a planned drug transaction. Finally, the State presented evidence from multiple witnesses establishing that Lil' Homie was Aaron Tubbs. For his part, Tubbs presented alibi witnesses who claimed he was in Fort Wayne, Indiana at the time of the shooting.

{¶ 6} After hearing the evidence, a jury found Tubbs guilty of the offenses set forth above. The trial court imposed an aggregate sentence of twenty-six years in prison. This appeal followed.

{¶ 7}     In his first assignment of error, Tubbs contends the trial court erred in allowing him to be convicted despite the prosecutor's failure to establish venue. Specifically, he claims the prosecutor failed to prove that the crimes alleged in the indictment were committed in Miami County.

{¶ 8}     It is well settled that "failure to establish venue in a criminal felony trial is a basis for acquittal[.]" *State v. Hampton*, 134 Ohio St.3d 447, 2012-Ohio-5688, 983 N.E.2d 324, ¶2. Here, however, the State properly established venue. Numerous witnesses testified that the crimes occurred at Fountain Park. At least one of those witnesses, police officer Brian George, testified that Fountain Park is in Miami County, Ohio. (Trial Tr., Doc. #48 at 163-164). The first assignment of error is overruled.

{¶ 9}     In his second assignment of error, Tubbs contends the trial court denied him a fair trial because he had an all-white jury. Tubbs, who is African American, asserts that he was entitled to a jury of his peers, which, in his view, means a jury that includes other African Americans.

{¶ 10}   The foregoing argument lacks merit for at several reasons. First, the record before us does not reflect the racial composition of Tubbs' jury. Therefore, the record does not establish that he had an all-white jury. Second, with regard to the entire venire, the record fails to demonstrate a timely objection to the jury array as required by Crim. R. 24. Finally, even if the entire prospective jury pool itself was entirely white, as he appears to claim, that fact does not establish a violation of his right to be tried by a jury of his peers. "The Sixth Amendment guarantee to a jury trial 'contemplates a jury drawn from a fair cross section of the community.'" *State v. McNeill*, 83 Ohio St.3d 438, 443-444, 700 N.E.2d 596 (1998), quoting *Taylor v. Louisiana*, 419 U.S. 522, 527, 95 S.Ct. 692, 42 L.Ed.2d 579 (1975). "To establish a violation of

this requirement, the 'defendant must prove: (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that the representation is due to systematic exclusion of the group in the jury-selection process.' " *Id.* at 444, quoting *State v. Fulton*, 57 Ohio St.3d 120, 566 N.E.2d 1195 (1991), paragraph two of the syllabus, citing *Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). Tubbs has not even attempted to satisfy this test, which cannot be done with nothing more than evidence that a defendant's particular venire is racially imbalanced. *Id.* Accordingly, the second assignment of error is overruled.

{¶ 11} In his third assignment of error, Tubbs alleges various instances of ineffective assistance of trial counsel. To prevail on this claim, he must show that his attorney's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Prejudice exists where "there is a reasonable probability that, but for counsel's deficient performance, the outcome would have been different." *Id.* at 694. Upon review, we see no ineffective assistance of counsel.

{¶ 12} Tubbs makes a broad attack on his trial counsel's preparation and performance. He argues that counsel (1) failed to represent him at a preliminary hearing, (2) failed to prepare, (3) violated a duty of loyalty, (4) never investigated anything, (5) failed to seek a mistrial based on the jury being all white, (6) failed to make the police "come up with more evidence," (7) failed to seek suppression of Butts' in-court identification of him, (8) allowed the State to admit evidence of his past crime, (9) failed to give an opening statement properly, and (10) failed to raise an allied-offense argument.

**{¶ 13}** The foregoing allegations fail to establish an ineffective-assistance claim. With regard to the argument about a preliminary hearing, we note that Tubbs was charged by indictment. He then was arraigned on the indictment with the assistance of appointed counsel. (Doc. #47 at 2). Tubbs' general arguments about his counsel failing to prepare, violating a duty of loyalty, and failing to investigate anything are not borne out by our review of the trial transcripts. With regard to the mistrial issue, Tubbs was not entitled to one on the basis that his jury was all white. We also see no ineffective assistance based on defense counsel's failure to force the State to produce more evidence. At trial, defense counsel attempted to point out shortcomings or deficiencies in the State's evidence. As for Butts' in-court identification of Tubbs, we see no basis for suppressing it. The State's introduction of evidence about a past crime also was not objectionable. Evidence of Tubbs' prior federal drug conviction was relevant to the charge against him for having a weapon while under disability. With regard to defense counsel's opening statement, we see nothing inappropriate about it. Finally, we see no basis for an allied-offense argument where Tubbs engaged in separate acts that constituted separate offenses. He was convicted of attempted murder for shooting Butts. He was convicted of aggravated robbery for stealing Butts' money. He was convicted of drug trafficking for offering to sell marijuana. He was convicted of having a weapon while under disability and a firearm specification because he was under disability and committed the offenses with a gun. The third assignment of error is overruled.

**{¶ 14}** In his fourth assignment of error, Tubbs claims his due process rights were violated by the State's "bad Faith Destruction of and/or Failure to Preserve Potentially Exculpatory Evidence that could have showed that the defendant was not at the scene or even

committed the crime."

{¶ 15} For a defendant to prevail on a due-process claim based on the destruction or loss of evidence, he must show that the State either (1) failed to preserve materially exculpatory evidence or (2) in bad faith, destroyed potentially useful evidence. *State v. Franklin*, Montgomery No. 19041, 2002-Ohio-2370, ¶44-46, citing *Arizona v. Youngblood*, 488 U.S. 51, 57-58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). In *Youngblood*, the United States Supreme Court held that the failure to preserve evidence that is "potentially useful" rather than material exculpatory evidence, amounts to a denial of due process only where the defendant can show the state acted in "bad faith." More than fifteen years after *Youngblood*, the United States Supreme Court revisited the issue in *Illinois v. Fisher*, 540 U.S. 544, 124 S.Ct. 1200, 157 L.Ed.2d 1080 (2004). Relying on *Youngblood*, the Court again held that when destroyed evidence is "potentially useful" rather than "materially exculpatory" there must be a showing of bad faith. "The distinction, then, is how the evidence is characterized." *State v. Barron*, 2d Dist. Greene No. 10-CA-28, 2011-Ohio-2425, ¶15.

{¶ 16} Here Tubbs complains about the State's failure to preserve for testing (1) clothing cut off of Butts after the shooting, (2) the green car Tubbs allegedly drove to Fountain Park, and (3) the vehicle Butts drove to the park. In our view, these pieces of evidence were merely potentially useful. At best, they might have been subjected to some tests, the results of which may or may not have been of any use to Tubbs. Therefore, absent a finding of bad faith, their destruction did not constitute a due-process violation. We see no bad faith here. With regard to the clothing, the record reveals that it was soaked with blood and rain. The State presented evidence that the clothing was of little evidentiary value and was not tested because anything on

it likely would have been washed away. (Trial Tr., Doc. #49 at 110, 131-132, 149). We note too that the bloody clothing was secured and placed into evidence at the Piqua Police Department. (Trial Tr., Doc. #48 at 166, 171-172). Therefore, it appears that Tubbs could have examined it and had it tested. Even assuming, arguendo, that the clothing later was destroyed, we see no bad faith.

{¶ 17}   We reach the same conclusion with regard to the green car. The record reveals that police released the car to its owner, Jennifer Douglas, shortly after the shooting. Tubbs argues that police should have secured the car to be tested for fingerprints, gunpowder residue on the steering wheel, and hair samples. The State presented evidence that testing for fingerprints and hair samples was not done because Douglas told them she had loaned her car to Tubbs. Police therefore expected to find his fingerprints or hairs inside the car, and their discovery would have added nothing to the case against him. (Trial Tr., Doc. #48 at 160-162). Similarly, the discovery of fingerprints or hairs from other people would have established little because "many people have ridden in her car." (*Id*. at 161). With regard to testing the steering wheel for gunpowder, the State presented evidence that the crime lab no longer tests for gunpowder-residue transfers from hands. (Trial Tr., Doc. #49 at 93, 150).

{¶ 18}   Finally, the record reveals that Butts' car was secured as evidence for a period of time. (Trial Tr., Doc. #48 at 166, 170-172). Therefore, it appears that Tubbs could have examined it and had it tested. Even assuming, arguendo, that the car was released without being tested, we see no bad faith. On appeal, Tubbs argues that police acted in bad faith by failing to look for fingerprints inside the vehicle. He theorizes that the perpetrator of the crime may have touched the gear shift while stealing Butts' $1,600. This assertion is speculation. At trial, the State

presented evidence that the car was not fingerprinted because (1) the perpetrator was not inside the car, (2) the night was wet, and (3) it is often difficult to lift prints from inside a vehicle. (Trial Tr., Doc. #49 at 140-140). Again, we see no bad faith. The fourth assignment of error is overruled.

{¶ 19} In his fifth assignment of error, Tubbs alleges that prosecutorial misconduct deprived him of a fair trial. Specifically, he claims the prosecutor engaged in misconduct by (1) shifting the burden of proof to him, (2) introducing evidence about a post-arrest letter he wrote to former friend Alicen Jackson, (3) eliciting testimony from a probation officer about his prior federal drug conviction, (4) commenting about his alibi witnesses in opening statements, (5) mentioning his federal drug conviction in opening statements, and (6) vouching for Michael Butts' veracity in closing arguments.

{¶ 20} "'The test for prosecutorial misconduct is whether the prosecutor's acts were improper in their nature and character and, if they were, whether the substantial rights of the defendant to a fair trial were prejudiced thereby.'" *State v. Hauptstueck*, 2d Dist. Montgomery No. 24013, 2011-Ohio-3502, ¶11 quoting *State v. McGonegal*, 2d Dist. Montgomery No. 18639, 2001 WL 1346024, *2 (Nov. 2, 2001). Upon review, we see no prosecutorial misconduct.

{¶ 21} Tubbs first complains that the prosecutor shifted the burden of proof to him by telling jurors that he lacked a coherent theory of the case. This issue appears to involve the prosecutor's closing argument rebuttal. There the prosecutor responded to issues raised by defense counsel's closing argument and urged jurors to apply common sense when evaluating the testimony of the alibi witnesses and defense counsel's version of events. We see no improper burden shifting.

**{¶ 22}** We also find no prosecutorial misconduct with regard to the evidence about the letter he wrote. At trial, the prosecutor elicited testimony from Alicen Jackson about a letter she received from Tubbs after his arrest. Among other things, Jackson testified about Tubbs telling her in the letter that she should not have talked to the police. After hearing this testimony, defense counsel objected and moved to strike it. (Trial Tr., Doc. #48 at 202); Trial Tr. Doc. #49 at 3-4). The trial court denied the motion. This court has recognized that "it is not misconduct for a prosecutor to introduce evidence that the trial court allows." *State v. Eicholtz*, 2d Dist. Clark No. 2012-CA-7, 2013-Ohio-302, ¶45, citing *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶187.

**{¶ 23}** The prosecutor also did not engage in misconduct by introducing evidence about Tubbs' federal drug conviction and commenting on the conviction. Evidence of the prior conviction was relevant to the charge against Tubbs for having a weapon while under disability.

**{¶ 24}** Nor did the prosecutor engage in misconduct by commenting about Tubbs' alibi witnesses in opening statements. The prosecutor simply told the jury what he anticipated each party's evidence would show. In the course of doing so, the prosecutor noted that Tubbs initially denied having been in Piqua for several weeks. The prosecutor noted the existence of evidence that he actually had been in Piqua on the day of the shooting. The prosecutor then stated:

> * * * And after [Tubbs] got wind of what the evidence might be in this case and the fact that there were people who were going to testify to his presence in town that day, he changed in mid stream, and now there's a Notice of Alibi on, and he's saying through that Notice of Alibi that he was in town till 3:00 and he left town at 3:00 and he was back in Fort Wayne by 5:30. So there's the change,

and that's significant.

(Trial Tr., Doc. #48 at 124).

**{¶ 25}** We see no prosecutorial misconduct arising from the foregoing statement to which Tubbs did not object.

**{¶ 26}** Finally, the prosecutor did not engage in misconduct by vouching for Butts' veracity in closing arguments. At one point during his closing argument, the prosecutor stated:

> I'm not going to stand up here and begin to condone what Michael Butts was doing in December of last year 2011. But as you know, we don't get to pick our witnesses; we take them as, as they come. But to his credit he told the truth from the very beginning; he told Officer Gearing that he was there to buy marijuana, and that he had been shot by a black man named Lil' Homie. And his identification is credible and powerful as based on three (3) face-to-face meetings. And you've heard about that repeatedly during the State's case.

(Trial Tr., Doc. #50 at 26).

**{¶ 27}** The prosecutor then reviewed evidence establishing that Butts was at Fountain Park to buy marijuana and that Lil' Homie shot him. Because the prosecutor's statement about Butts' testimony being truthful was grounded in the evidence rather than a personal belief that Butts was credible, no improper vouching occurred. *State v. Hopkins*, 2d Dist. Montgomery No. 24940, 2012-Ohio-5536, ¶20; *State v. Jeffrey*, 2d Dist. Montgomery No. 24916, 2013-Ohio-504, ¶20-21. The fifth assignment of error is overruled.

**{¶ 28}** The judgment of the Miami County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

FROELICH and WELBAUM, JJ., concur.

Copies mailed to:

Robert E. Long, III
Marcy A. Vonderwell
Aaron D. Tubbs
Hon. Christopher Gee