[Cite as *State v. Tubbs*, 2016-Ohio-842.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MIAMI COUNTY**

STATE OF OHIO                          :
                                       :      C.A. CASE NO. 2015-CA-14
        Plaintiff-Appellee          :
                                       :      T.C. NO.   12CR32
v.                                     :
                                       :      (Criminal appeal from
                                       :       Common Pleas Court)
AARON D. TUBBS                         :
                                       :
        Defendant-Appellant         :
                                       :

. . . . . . . . . . .

**O P I N I O N**

Rendered on the    4th    day of     March    , 2016.

. . . . . . . . . . .

JANNA L. PARKER, Atty, Reg. No. 0075261, Assistant Prosecuting Attorney, Miami County Prosecutor's Office, 201 W. Main Street, Troy, Ohio 45373
      Attorney for Plaintiff-Appellee

THOMAS M. KOLLIN, Atty. Reg. No. 0066964, 2372 Lakeview Drive, Suite H, Beavercreek, Ohio 45431
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, P.J.

{¶ 1} Defendant-appellant Aaron D. Tubbs appeals a decision of the Miami County Court of Common Pleas, Criminal Division, denying his pro se motion for leave to file a delayed motion for new trial.   Tubbs filed a timely notice of appeal with this Court on May 11, 2015.

{¶ 2} We set forth the history of the case in *State v. Tubbs*, 2d Dist. Miami No. 2012-CA-20, 2013-Ohio-4391 (hereinafter "*Tubbs I*"), and repeat it herein in pertinent part:

*** The record reflects that the charges against him stemmed from his alleged participation in a planned drug transaction. The victim, Michael Butts, testified at trial that he agreed to purchase one and a half pounds of marijuana from Tubbs for $1,600. Although the two men were not friends, Butts was familiar with Tubbs, who he knew only by the street name Lil' Homie. According to Butts, the two men agreed to meet at Fountain Park in Piqua to complete the transaction. Butts testified that he and Tubbs arrived at the location in separate cars. Butts remained in his car, which Tubbs approached on foot. Tubbs reached through the open passenger-side window and placed a book bag on the front seat of Butts' car. When Butts started to look inside the book bag, Tubbs shot him several times and took $1,600 from Butts' car without leaving any marijuana. Two eyewitnesses, Gregory Scholl and Lacey Reed, were in the park and observed the shooting. Because it was dark, they were unable to identify the shooter. Reed did testify, however, that the shooter left the scene in a green car. Another witness, Kelly Long, lived across the street from Fountain Park. She testified that she saw a green car "quickly" driving away after the gunshots.

Tubbs' friend Jennifer Douglas called 911 on the night of the shooting to report that Tubbs had borrowed her green Ford Taurus and had not

returned it. The vehicle later was discovered blocks from the crime scene and returned to Douglas. The State also presented evidence of numerous phone calls and text messages between Butts' phone and a phone number linked to Tubbs. The calls and texts occurred prior to the shooting, and the text messages addressed a planned drug transaction. Finally, the State presented evidence from multiple witnesses establishing that Lil' Homie was Aaron Tubbs. For his part, Tubbs presented alibi witnesses who claimed he was in Fort Wayne, Indiana at the time of the shooting.

After hearing the evidence, a jury found Tubbs guilty of the offenses set forth above.[1] The trial court imposed an aggregate sentence of twenty-six years in prison.

*Id.*, ¶¶ 4-6. Tubbs appealed, and we affirmed his conviction and sentence in *Tubbs I*, issued on September 30, 2013.

**{¶ 3}** Thereafter, on December 11, 2014, Tubbs filed a pro se motion for leave to file a delayed motion for new trial. In his motion, Tubbs requested an evidentiary hearing in order to present newly discovered evidence in the form of the affidavit executed by an individual named James Parson. In his affidavit, Parson stated that Butts admitted that Tubbs was not the individual who shot him during the aborted drug deal at Fountain Park. On April 16, 2015, the State filed a memorandum in opposition to Tubbs' motion for leave to file a delayed motion for new trial. The trial court subsequently denied Tubbs' motion in a decision on April 23, 2015.

---

[1] Tubbs was convicted and sentenced on charges of attempted murder, aggravated robbery, drug trafficking, having a weapon while under disability, and a firearm specification.

{¶ 4} It is from this judgment that Tubbs now appeals.

{¶ 5} Because they are interrelated, Tubbs' first and second assignments of error will be discussed together as follows:

{¶ 6} "THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING THE APPELLANT'S MOTION FOR LEAVE TO FILE A MOTION FOR NEW TRIAL."

{¶ 7} "THE APPELLANT WAS DENIED DUE PROCESS OF LAW WHEN THE TRIAL COURT DENIED APPELLANT'S REQUEST FOR AN EVIDENTIARY HEARING."

{¶ 8} In his first assignment Tubbs contends that the trial court abused its discretion when it denied his motion for leave to file a delayed motion for new trial. Specifically, Tubbs challenges the trial court's finding that he failed to establish by clear and convincing evidence that he was unavoidably prevented from discovering evidence of the conversation between Butts and Parson. Tubbs further argues that the trial court erred when it refused to hold an evidentiary hearing pursuant to Crim.R. 33 before denying his motion for leave to file a delayed motion for new trial. Tubbs asserts that the trial court had an obligation to afford him a "reasonable opportunity to be heard."

{¶ 9} Crim.R. 33 provides in relevant part as follows:

(A) A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:

***

(6) When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the

hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case. The prosecuting attorney may produce affidavits or other evidence to impeach the affidavits of such witnesses.

***

(B) Motions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered, or the decision of the court where trial by jury has been waived. If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period.

{¶ 10} As this Court has previously noted:

* * * To seek a new trial based on new evidence more than 120 days after the verdict, a petitioner "must first file a motion for leave, showing by 'clear and convincing proof that he has been unavoidably prevented from filing a motion in a timely fashion.' " [State v. Parker, 178 Ohio App.3d 574, 577, 2008–Ohio–5178], 899 N.E.2d 183 [(2d Dist.)], quoting State v. Morgan, Shelby App. No. 17–05–26, 2006–Ohio–145. " '[A] party is unavoidably prevented from filing a motion for new trial if the party had no knowledge of

the existence of the ground supporting the motion for new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence.' "

*Id.,* quoting *State v. Walden* (1984), 19 Ohio App.3d 141, 145–146, 483 N.E.2d 859.

*State v. Wilson,* 2d Dist. Montgomery No. 23247, 2009–Ohio–7035, ¶ 8.

{¶ 11} As this Court has further noted regarding a hearing on a motion for leave to file a motion for a new trial:

* * * We have held that a defendant is entitled to such a hearing if he submits "documents that on their face support his claim that he was unavoidably prevented from timely discovering the evidence" at issue. *State v. York* (Feb. 18, 2000), Greene App. No. 99–CA–54, [2000 WL 192433], citing *State v. Wright* (1990), 67 Ohio App.3d 827, 828; see, also, *State v. Mitchell,* Montgomery App. No. 19816, 2004–Ohio–459, ¶ 7–10 (finding affidavits sufficient to warrant a hearing on whether the defendant was unavoidably prevented from discovering the facts upon which his request for a new trial relied). Notably, the documents at issue in *York* and *Wright* were affidavits from prosecution witnesses recanting their trial testimony against the defendant.

*State v. McConnell,* 170 Ohio App.3d 800, 2007–Ohio–1181, 869 N.E.2d 77, ¶ 19 (2d Dist.).

{¶ 12} "We review a trial court's ruling on a Crim.R. 33 motion for an abuse of discretion. *State v. McCoy,* 2d Dist. Montgomery No. 21032, 2006–Ohio–1137, ¶

8." *State v. Thompson,* 2d Dist. Montgomery No. 25016, 2012–Ohio–4862, ¶ 7. This Court recently noted as follows:

> "Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248, 1252 (1985). It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.
>
> A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.,* 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

*State v. Mitchell,* 2d Dist. Montgomery No. 25976, 2014–Ohio–5070, ¶ 13–14.

{¶ 13} Tubbs was convicted in August of 2012. He did not file his motion for leave to file a delayed motion for new trial until December 11, 2014, well beyond the 120–day limit in Crim.R. 33(A)(6). Thus, Tubbs was required to establish by clear and convincing evidence that he was unavoidably prevented from discovering the new evidence he relies upon. *State v. Roberts*, 141 Ohio App.3d 578, 582, 752 N.E.2d 331 (6th Dist. 2001).

{¶ 14} In the affidavit attached to Tubbs' motion for leave, Parson averred as

follows:

2. I had a verbal conversation with Michael "Fatty" Butts on December 20, 2011, and he verbally told me that he spoke to guy named BJ, who was suppose [sic] to have contacted Aaron Tubbs (hereinafter "Tubbs") for Fatty to purchase some marijuana from Tubbs.

\*\*\*

5. Fatty told me he went to the park to meet Tubbs by himself, and upon arriving at the park to purchase the marijuana, someone (an unknown male) approached the passenger side window of Fatty's vehicle and pointed a gun at him and said "let me get everything you got."

6. Fatty verbally told me, [sic] he told the unknown assailant "you have to kill me."

7. The unknown assailant then fired his gun.

8. I asked Fatty did he recognize the assailant and Fatty said he did not recognized the man's face.

9. I further asked Fatty was it Aaron Tubbs who shot him, because that is the guy he was suppose [sic] to meet at the park to purchase the marijuana.

10. Fatty verbally told me it wasn't Aaron Tubbs.

11. I asked Fatty how do [sic] he know it wasn't Aaron Tubbs who shot him, and Fatty told me he seen [sic] the guy face [sic] and that is how he know [sic] it wasn't Aaron Tubbs who shot him.

12. I then asked Fatty why did he blame it on Aaron Tubbs if Aaron Tubbs didn't rob and shoot him, and Fatty said he was mad that he got shot going

to meet Aaron Tubbs and felt someone should be held responsible.

13. I recently approached Aaron Tubbs (June 2014) and explained to him the conversation I had with Fatty in reference to this incident.

***

15. Aaron Tubbs never knew Fatty and myself had this conversation.

{¶ 15} After a thorough review of the record, we hold that Tubbs' conclusory statement that he was unavoidably delayed to be insufficient to demonstrate clearly and convincingly that he could not have discovered this "new" evidence with due diligence. In particular, the affidavit submitted by Tubbs fails to explain how Parson's alleged conversation with Butts came to light or why there was such a long delay in obtaining it. Parson's affidavit provides no information or context regarding how he knows the shooting victim, Butts. Significantly, the affidavit does not identify the location of the alleged conversation Parson had with Butts. Most importantly, however, Parson fails to explain in his affidavit why he neglected to come forth with the exculpatory evidence regarding the identity of the shooter until over approximately two years after the incident occurred in June of 2014. Parson's failure in this regard is especially damaging to the credibility of his affidavit because he stated that he had the conversation with Butts on December 20, 2011, only fourteen days after the shooting which occurred on December 5, 2011. Accordingly, we find nothing in Parson's affidavit which supports Tubbs' claim that he was unavoidably prevented from discovering the statements obtained from Butts during the alleged conversation with Parson. Viewed in a light most favorable to Tubbs, the affidavit only indicates that he did not become aware of the information until some point in June of 2014. We therefore agree with the trial court that the affidavit does not satisfy the

second prong of the test for newly discovered evidence, namely that which requires the petitioner to establish that he could not have learned of the information in the exercise of reasonable diligence. Because Parson's affidavit was clearly deficient on its face, Tubbs was, likewise, not entitled to an evidentiary hearing on his motion for leave to file a motion for new trial.

{¶ 16} Lastly, in *State v. York,* 2d Dist. Greene No. 2000 CA 70, 2001 WL 332019 (Apr. 6, 2001), we found that a trial court may require a defendant to file his motion for leave to file a motion for new trial *within a reasonable time* after he discovers the new evidence. In *York,* the defendant waited over one and a half years after discovering the new evidence before he filed his motion for leave to file a motion for new trial. *Id.* We subsequently concluded that the defendant did not file his motion for leave within a reasonable time after he discovered the new evidence and affirmed the trial court's decision overruling his motion for leave to file a motion for new trial. *Id.*

{¶ 17} As previously noted, Tubbs asserts that he became aware of the telephone conversation between Parson and Butts in June of 2014. Tubbs, however, did not file his motion for leave to file a motion for new trial until approximately six months later on December 11, 2014. Tubbs provides no reason for the six-month delay. On this record, we cannot excuse the lengthy delay in filing the motion for leave with the trial court wherein he utilized "newly discovered evidence" which came to light six months prior. *See State v. Lenoir*, 2d Dist. Montgomery No. 26080, 2015-Ohio-1045, ¶ 24. "Allowing the defendant to file a motion [for] leave [to file] a motion for new trial at any time would frustrate the overall objective of the criminal rules in providing the speedy and sure administration of justice, simplicity in procedure, and the elimination of unjustifiable

delay." *York,* citing *State v. Barnes,* 12th Dist. Clermont No. CA99–06–057, 1999 WL 1271665 (Dec. 30, 1999).

{¶ 18} Assuming arguendo that the trial court erred in determining that Tubbs was not unavoidably prevented from discovering the evidence upon which he relies, we would nevertheless affirm the trial court's ruling because Tubbs did not file his motion for leave to file a motion for new trial within a reasonable time after he discovered the new evidence.

{¶ 19} Tubbs' first and second assignments of error are overruled.

{¶ 20} Both of Tubbs' assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

WELBAUM, J., concurs.

FAIN, J., concurring in the judgment:

{¶ 21} In paragraph 13 of his affidavit, Butts avers that he did not tell Tubbs about his conversation with the victim until June 2014. In paragraph 15, Butts avers that Tubbs had no prior knowledge of that conversation. In my view, these averments satisfy the requirement that Tubbs was unavoidably prevented from discovering the factual basis for his new trial motion until more than 120 days after the verdict.

{¶ 22} But I agree with the majority opinion that the delay from Tubbs's discovery of the new evidence in June 2014 until the filing of his motion in December 2014 – a delay in excess of the 120-day initial period established in Crim.R. 33 – was unreasonable. The trial court did not abuse its discretion in overruling the motion for that reason. Accordingly, I concur in affirming the order of the trial court from which this appeal is

taken.

. . . . . . . . . . . . . .

Copies mailed to:

Janna L. Parker
Thomas M. Kollin
Hon. Christopher Gee