[Cite as *State v. Apanovitch*, 2020-Ohio-4217.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                                    :

    Plaintiff-Appellee,                   :

                                        No. 108924

    v.                                          :

ANTHONY C. APANOVITCH,

    Defendant-Appellant.                  :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 27, 2020

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-84-194156-ZA

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Katherine E. Mullin, Assistant Prosecuting Attorney, *for appellee.*

Bergman, Gordon, Murray & DeVan, Mark R. DeVan, and William C. Livingston; Crowell & Moring, L.L.P., Harry P. Cohen, Michael K. Robles, and James K. Stronski, Pro Hac Vice, *for appellant.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Defendant-appellant, Anthony C. Apanovitch, appeals from the trial court's judgment denying his Crim.R. 33 motion for new trial. Apanovitch raises

five assignments of error challenging the trial court's decision. Because Apanovitch never filed a motion for leave to file a motion for new trial as required by Crim.R. 33, we affirm the trial court's decision without reaching the merits of any of the assigned errors.

## I.    Background

{¶ 2} On August 24, 1984, Mary Anne Flynn was found dead in the bedroom of her Cleveland home. She had been strangled and severely beaten, and sperm was found in her mouth and vagina. In December 1984, a Cuyahoga County jury convicted Apanovitch of aggravated murder, aggravated burglary, and two counts of rape relating to the crime, and recommended a death sentence. In January 1985, the trial court sentenced Apanovitch to 15-25 year terms on each of the aggravated burglary and rape convictions, for a total of 45-75 years in prison, and imposed a death sentence on the aggravated murder count.

{¶ 3} On direct appeal, this court and the Ohio Supreme Court affirmed Apanovitch's convictions and death sentence. *State v. Apanovitch*, 8th Dist. Cuyahoga No. 49772, 1986 Ohio App. LEXIS 8046 (Aug. 28, 1986); *State v. Apanovitch*, 33 Ohio St.3d 19, 514 N.E.2d 394 (1987). Apanovitch unsuccessfully pursued numerous avenues for relief, including three state postconviction petitions, *State v. Apanovitch*, 70 Ohio App.3d 758, 591 N.E.2d 1374 (8th Dist.1991); *State v. Apanovitch*, 107 Ohio App.3d 82, 667 N.E.2d 1041 (8th Dist.1995); *State v. Apanovitch*, 113 Ohio App.3d 591, 681 N.E.2d 961 (8th Dist.1996), and a federal habeas action, *Apanovitch v. Houk*, N.D.Ohio No. 1:91CV2221, 2009 U.S. Dist.

LEXIS 103985 (Aug. 14, 2009), *aff'd sub nom. Apanovitch v. Bobby*, 648 F.3d 434

(6th Cir.2011).

{¶ 4} DNA testing of evidence relating to Flynn's rape and murder occurred

in the years following Apanovitch's convictions:

> When conducting Flynn's autopsy, a forensic pathologist with the Cuyahoga County Coroner's office[1] created slides that contained specimens obtained from Flynn's mouth and vagina. DNA testing of the specimens was not available at the time of trial in 1984.
>
> In 1988, one of Apanovitch's attorneys asked the coroner's office for records related to Flynn's death. At that time, the slides could not be located and it was assumed that they had been lost or destroyed. But in 1991, three slides related to Flynn's case (one vaginal slide and two oral slides) were located.[2]
>
> In 1991, the coroner's office sent the slides to Forensic Science Associates ("FSA") in California for DNA testing. Due to the condition of the samples, FSA determined that it could not analyze two of the slides (the vaginal slide and one oral slide), but it was able to determine a partial DNA type of the other oral slide (referred to by FSA as "Item 2"). A sample of Apanovitch's DNA was not available to FSA at that time for comparison.
>
> In 2000, an assistant Cuyahoga County prosecuting attorney asked the Cuyahoga County Coroner to conduct DNA testing on "any trace evidence or samples" related to Flynn's murder. The assistant prosecutor's letter said, "It is the intention of this request that the identity of the donor of sperm found in the victim, Mary Ann [sic] Flynn, be established to the degree of scientific certainty available." By that time, FSA had returned the vaginal and oral slides to the coroner's office. The coroner's office tested the slides in late 2000 but concluded

---

[1] The county official formerly known as the Cuyahoga County Coroner is now known as the Cuyahoga County Medical Examiner. *See* Cuyahoga County Charter, Section 5.03, effective January 1, 2010.

[2] During habeas review, the federal district court found that the chain of custody of these slides had not been broken. *Apanovitch v. Houk*, 2009 U.S. Dist. LEXIS 103985 at *24.

that there was not sufficient material left on them to obtain a clear DNA profile.

In 2006, * * * FSA further analyzed DNA from its Item 2, the specimen from Flynn's mouth, which it had retained and stored frozen in its DNA archive. This time, FSA developed a more complete male DNA profile that occurs in about 1 in 285 million Caucasian males. In 2007, the federal district court in Apanovitch's habeas case ordered Apanovitch, a Caucasian male, to provide a sample of his DNA for comparison. After analyzing that sample, FSA concluded that Apanovitch could not be eliminated as the source of the sperm taken from Flynn's mouth. * * *

*State v. Apanovitch*, 155 Ohio St.3d 358, 2018-Ohio-4744, 121 N.E.3d 351, ¶ 10-14.

{¶ 5} In 2012, Apanovitch filed his fourth postconviction petition, focusing on the 2000 test by the coroner's office of a specimen taken from Flynn's vagina. *Id.* at ¶ 15. Apanovitch asserted that he only learned of the results of the testing in 2008, during the federal litigation, and that this newly discovered evidence showed he was innocent of the offense. At the postconviction hearing, Apanovitch's expert, Dr. Rick Staub, testified about his review of the results of the testing of that specimen. *Id.* Dr. Staub, unlike the coroner's office, concluded that a sample from the vaginal slide had produced useful results. *Id.* "In his opinion, the testing showed that Apanovitch's sperm was not on that slide, but the DNA of at least two other unknown males was on the slide," and Apanovitch was therefore excluded as a contributor of the sperm. *Id.* The state's expert, Dr. Elizabeth Benzinger, testified at the postconviction hearing that the vaginal sample contained a low level of DNA and

could have been contaminated, but did not testify regarding whether Apanovitch was excluded as a contributor of the sperm. *Id.*[3]

**{¶ 6}** Because Dr. Staub's testimony that Apanovitch was excluded as a contributor to the vaginal sample from the victim was unrebutted by Dr. Benzinger, the trial court acquitted Apanovitch of the vaginal rape charge. *Id.* at ¶ 16. The trial court then dismissed the other rape charge "for its lack of specificity or differentiation from the other count in violation of [Apanovitch's] due process rights." *Id.* Then, in light of the changes regarding the evidence and to the charges, the trial court granted Apanovitch a new trial on the aggravated murder and aggravated burglary counts pursuant to Crim.R. 33. *Id.*

**{¶ 7}** "In reaching its decision, the trial court found that 'there was insufficient material to reach any conclusion whether [Apanovitch's] DNA was contained in the material recovered from the victim's mouth.'" *Id.* at ¶ 17. However, "[b]ecause evidence of the 2007 report from FSA was not presented at the postconviction hearing, the trial court did not consider FSA's finding in that report that only 1 in 285 million Caucasians has the same DNA profile as Apanovitch and the sperm found in Flynn's mouth." *Id.*

---

[3] Dr. Benzinger also testified that sperm can persist in the vaginal cavity for up to five days and, in contrast, sperm can only persist in the mouth "[v]ery often much less than a day, a matter of hours." (Tr. 272.) Dr. Benzinger concluded that "[t]he oral sample would definitely have been near the time of death. The vaginal sample, it could be five days old or it could be the same age as the oral sample." *Id.* at 272-273.

{¶ 8} On appeal, this court held that the trial court did not abuse its discretion in finding Apanovitch actually innocent of the vaginal rape. *State v. Apanovitch*, 8th Dist. Cuyahoga Nos. 102618 and 102698, 2016-Ohio-2831, ¶ 68. This court also affirmed the trial court's dismissal of the second rape charge. *Id.* at ¶ 69.

{¶ 9} Upon the state's appeal, the Ohio Supreme Court vacated the trial court and this court's decisions, ruling that the trial court lacked subject-matter jurisdiction to consider Apanovitch's petition brought under R.C. 2953.23. *Apanovitch*, 155 Ohio St.3d 358, 2018-Ohio-4744 at ¶ 42.

{¶ 10} The Supreme Court next considered whether to remand the cause for further proceedings. *Id.* at ¶ 43. The court noted that prior to the trial court's postconviction hearing, the state had joined Apanovitch in stipulating that "Rule 33 of the Ohio Rules of Criminal Procedure appl[ies] to this postconviction proceeding," and that the trial court "shall refer to and rely on said rule * * * during its deliberations and judgment."[4] *Id.* The court noted, however, that in its post-hearing brief, the state had discussed the standards for granting a motion for new trial under Crim.R. 33 and urged the trial court to deny Apanovitch's motion for new trial. *Id.* The Supreme Court noted further that according to the state, if the trial court lacked jurisdiction to consider the postconviction relief petition, remand for

---

[4] Crim.R. 33 procedures for a new trial are independent of the R.C. 2953.21 procedures for postconviction relief. *State v. Cashin*, 10th Dist. Franklin No. 17AP-338, 2017-Ohio-9289, ¶ 13.

Crim.R. 33 purposes was unnecessary because Apanovitch never filed a motion for a new trial pursuant to Crim.R. 33 and, further, had not demonstrated, as required by the rule, that he was "unavoidably prevented" from discovery of the evidence upon which his claim was based under Crim.R. 33. *Id.*

{¶ 11} The Supreme Court found that because the state had not appealed the trial court's conclusion of law that Crim.R. 33 "is applicable to the proceedings," nor the trial court's reliance on Crim.R. 33 as part of its rationale for granting a new trial, it could not "squarely address" any Crim.R. 33 issues. *Id.* Thus, in light of its vacation of the judgment and "the unusual procedural history" of the case, the Supreme Court ruled that "the trial court should have the first opportunity to determine whether it has the authority to take any action beyond dismissing Apanovitch's postconviction petition," and remanded the matter to the trial court "for the limited purpose of determining if any further proceedings are necessary and, if so, resolving any remaining issues in a manner consistent with this opinion." *Id.*

{¶ 12} Upon remand, after a hearing and the submission of posthearing briefs, the trial court denied Apanovitch's motion for new trial. In its journal entry denying the motion, the court found that in light of the parties' stipulation that the trial court "would consider Rule 33 along with the postconviction petition," the motion for new trial was to be treated "as a new and separate filing, subject to the same scrutiny as any Rule 33 motion."

{¶ 13} The trial court then considered whether Apanovitch was unavoidably prevented from filing the motion for new trial, and concluded that even though "[he]

knew of the existence of material from which a DNA analysis could be conducted in 1992," "[a]s a result of the seemingly never-ending appeals since the discovery of the slides, [he] did seek relief at his first opportunity procedurally." Then, upon considering the merits of the motion, the trial court ruled that in light of the FSA report finding Apanovitch to be 1 in 285 million Caucasian males to fit the DNA profile of the swab from the victim's mouth, Apanovitch could not demonstrate a strong possibility under Crim.R. 33(A)(6) that the alleged exculpatory DNA evidence regarding the vaginal rape would change the result if a new trial were granted. Accordingly, the trial court denied the motion for new trial. Nevertheless, in light of Dr. Staub's unrebutted testimony at the hearing on the postconviction petition, the trial court again acquitted Apanovitch of one count of rape.[5] This appeal followed.

## II. Law and Analysis

{¶ 14} Motions for new trial are governed by Crim.R. 33. The decision to grant or deny a motion for new trial is within the trial court's discretion and will not be reversed absent an abuse of that discretion. *State v. Hawkins*, 66 Ohio St.3d 339, 350, 612 N.E.2d 1227 (1993).

{¶ 15} With respect to newly discovered evidence, a new trial may be granted "when new evidence material to the defense is discovered, which the defendant

_____

[5] The state did not cross-appeal from the trial court's judgment, and the prosecutor stated at oral argument that the state has no objection to this part of the trial court's ruling.

could not with reasonable diligence have discovered and produced at the trial." Crim.R. 33(A)(6). A motion for new trial on account of newly discovered evidence must be filed within 120 days after the day on which the verdict was rendered, unless the defendant shows by clear and convincing evidence that the defendant "was unavoidably prevented from the discovery of the evidence upon which he must rely." Crim.R. 33(B). "If the motion for a new trial is beyond the 120-day deadline, the defendant must first seek leave to file the motion and explain why the defendant was unavoidably prevented from filing the motion at an earlier date." *State v. Johnson*, 8th Dist. Cuyahoga No. 105729, 2018-Ohio-175, ¶ 2, citing Crim.R. 33(B). "[A] party is unavoidably prevented from filing a motion for new trial if the party had no knowledge of the existence of the ground supporting the motion for new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence." *State v. Walden*, 19 Ohio App.3d 141, 483 N.E.2d 859 (10th Dist.1984).

{¶ 16} Although Crim.R. 33 does not provide a specific time limit in which defendants must file a motion for leave to file a delayed motion for new trial, Ohio courts have determined that a defendant is required to file his or her motion for leave within a reasonable time after he or she discovers the evidence. As this court explained:

> A trial court must first determine if a defendant has met his burden of establishing by clear and convincing proof that he was unavoidably prevented from filing his motion for a new trial within the * * * time limits. If that burden has been met but there has been an undue delay in filing the motion after the evidence was discovered, the trial court

must determine if that delay was reasonable under the circumstances or that the defendant has adequately explained the reason for the delay.

*State v. Stansberry,* 8th Dist. Cuyahoga No. 71004, 1997 Ohio App. LEXIS 4561, *9 (Oct. 3, 1997). *See also State v. Thomas*, 1st Dist. Hamilton Nos. C-150581 and C-150555, 2017-Ohio-4403, ¶ 8 (a reasonable time requirement is not inconsistent with the criminal rules and advances the objective of those rules by securing the "speedy and sure" administration of justice and eliminating unjustifiable delay).

{¶ 17} If the trial court grants the motion for leave, the defendant must then file his actual motion for a new trial within seven days of the trial court's order. Cim.R. 33(B); *State v. Noor*, 10th Dist. Franklin No. 16AP-340, 2016-Ohio-7756, ¶ 11. In that motion, the defendant must show that the new evidence:

> (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issue, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence.

*State v. Hawkins*, 66 Ohio St.3d 339, 350, 612 N.E.2d 1227 (1993).

{¶ 18} The verdict in Apanovitch's trial was announced in December 1984. Thus, the 120-day deadline for filing a motion for new trial as set forth in Crim.R. 33(B) had long since passed when Apanovitch filed his postconviction petition in March 2012; even more time had passed as of September 18, 2014, when the parties stipulated prior to the postconviction hearing that Crim.R. 33 applied to the postconviction proceeding. Thus, Apanovitch was required to file a motion for leave to file a delayed motion for new trial. He never did so.

{¶ 19} This court and others have held that the failure to file a motion for leave is a sufficient reason to affirm the trial court's denial of a motion for new trial. *See State v. Smith*, 8th Dist. Cuyahoga No. 100588, 2014-Ohio-4799, ¶ 9 (because the defendant "filed his motion for a new trial without first seeking leave of court, he failed to comply with the necessary procedural steps set forth in Crim.R. 33. As a result, the trial court properly overruled his motion for a new trial."); *State v. Norman*, 10th Dist. Franklin No. 04AP-1312, 2005-Ohio-5087, ¶ 8 (defendant's failure to obtain leave of court was a sufficient basis for overruling motion for new trial); *State v. Mir*, 7th Dist. Mahoning No. 12 MA 210, 2013-Ohio-2880, ¶ 12 (defendant's failure to file a motion for leave was "reason enough" to affirm the trial court's decision denying the motion for new trial); *State v. Schrock*, 11th Dist. Lake No. 2004-L-056, 2005-Ohio-440, ¶ 11 (defendant's "failure to seek leave from the court to file his motion [for new trial] is fatal"). Notably, the Sixth District has held that where a defendant does not seek leave to file a delayed motion for new trial, the trial court abuses its discretion by even considering the defendant's untimely motion. *State v. Roberts*, 141 Ohio App.3d 578, 582, 752 N.E.2d 331 (6th Dist.2001); *see also State v. Green*, 10th Dist. Franklin No. 13AP-260, 2013-Ohio-5327, ¶ 10 ("Leave of court must be granted before the merits of the motion are reached.").

{¶ 20} Apanovitch contends that the parties' stipulation obviated any need for him to file a motion for leave because by stipulating that Crim.R. 33 "appl[ies] to this postconviction proceeding" and that the trial court "shall rely" on Crim.R. 33 in its "deliberations and judgment," the parties agreed that the timing and procedural

elements of Crim.R. 33 had been satisfied and his request for a new trial was properly before the trial court.  (Reply Brief, p. 3.)  This argument has no merit.

{¶ 21} The stipulation at most indicated that the trial court could consider Apanovitch's petition as a Crim.R. 33 motion for new trial; the parties in no way stipulated that the motion *satisfied* the requirements of Crim.R. 33.  If that were true, the trial court would have been required to immediately grant the motion for new trial upon the filing of the stipulation.  The stipulation did not relieve Apanovitch of his burden of complying with the rule.  Thus, to secure court review of his untimely motion for new trial, Apanovitch had to first file a motion for leave establishing that he was unavoidably prevented from discovering the evidence upon which his Crim.R. 33 motion for new trial was based, and further, that his failure to file the motion until 2012 was not an unreasonable delay even though he learned in 2008 of the new evidence upon which his motion was based.  He did not do so, and his failure to comply with the prerequisites of the rule is fatal.

{¶ 22} The trial court's journal entry stated that it considered the Crim.R. 33 motion for a new trial "as a new and separate filing, subject to the same scrutiny as any Rule 33 motion."  The law is clear that where a Crim.R. 33 motion for new trial on the basis of new evidence is filed beyond the 120-day deadline, the defendant must first seek leave to file the untimely motion.  "Crim.R. 33 requires adherence to the prerequisites of the rule that Apanovitch and all other litigants are required to satisfy.  And the trial court is required to assure compliance with the rule." *Apanovitch*, 155 Ohio St.3d 358, 2018-Ohio-4744, at ¶ 52 (O'Donnell, J., concurring

in part and dissenting in part). Because Apanovitch failed to follow the requisite procedure to seek relief pursuant to the rule, the trial court could have denied the motion without any further consideration.

{¶ 23} We recognize there is authority from this court suggesting that failure to file a motion for leave is harmless error where the defendant submits evidentiary evidence that discloses a strong probability of a different result if a new trial were granted. *State v. Gray*, 8th Dist. Cuyahoga No. 94282, 2010-Ohio-5842, ¶ 21 (trial court abused its discretion in denying defendant's motion for new trial without an evidentiary hearing because even though the defendant had not requested leave to file his untimely motion, he submitted evidence with his motion that disclosed a strong probability of a different result if a new trial were granted). Apanovitch's motion for new trial did not meet this standard, however, in light of the highly inculpatory DNA evidence showing that "DNA taken from Apanovitch is comparative to the DNA found on the oral slide taken from the victim." *Apanovitch v. Houk*, N.D. Ohio No. 1:91CV2221, 2009 U.S. Dist.LEXIS 96911, *2. Moreover, nowhere in the fourth petition for postconviction relief did Apanovitch request a determination regarding unavoidable prevention or reasonableness of delay for purposes of Crim.R. 33, nor did he request a new trial pursuant to that rule.

{¶ 24} Despite Apanovitch's failure to comply with the requisite Crim.R. 33(B) procedures, the trial court held an evidentiary hearing, after which it denied Apanovitch's motion for a new trial. The court found that in light of the FSA report finding Apanovitch to be 1 in 285 million Caucasian males to fit the DNA profile of

the swab from the victim's mouth, Apanovitch could not demonstrate a strong possibility under Crim.R. 33(A)(6) that the alleged exculpatory DNA evidence regarding the vaginal rape would change the result if a new trial were granted.

{¶ 25} Although the trial court denied Apanovitch's motion after addressing the merits of the motion, we affirm the trial court's judgment upon different grounds. An appellate court may decide an issue on grounds different from those determined by the trial court if the evidentiary basis on which the court of appeals decides the legal issue was presented to the trial court and made part of the record. *State v. Peagler*, 76 Ohio St.3d 496, 501, 668 N.E.2d 489 (1996). Apanovitch's failure to comply with the requisite procedures of Crim.R. 33 was presented to the trial court; in both the hearing upon remand from the Ohio Supreme Court and its posthearing brief, the state argued that Apanovitch's failure to file a motion for leave was fatal to his Crim.R. 33(B) claim. Accordingly, we affirm the trial court's judgment denying Apanovitch's motion for new trial, finding that the trial court did not abuse its discretion in denying the motion because Apanovitch filed his motion for new trial without first seeking leave of court, and thereby failed to comply with the necessary procedural steps set forth in Crim.R. 33(B). In light of our holding, we need not reach the merits of the assignments of error, which are therefore overruled.

{¶ 26} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

EILEEN T. GALLAGHER, A.J., and
SEAN C. GALLAGHER J., CONCUR